## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SHANE ANDERS,**
**STAR TOWING AND RECOVERY, LLC,** and
**AREA TOWING AND RECOVERY, INC.**
               Plaintiffs,                        **Case No. 19-cv-**
                                                    **HON.**

v.

**TONY CUEVAS,** in his individual capacity as Post Commander for the Michigan State Police,
**DARZEIL HALL**, in his individual capacity as a Michigan State Trooper,
**CITY OF TAYLOR,**
**HERMAN "BUTCH" RAMIK**, in his individual and official capacities as an elected member of the Taylor City Council, **and**
**RICK SOLLARS,** in his individual and official capacities as the elected Mayor of the City of Taylor,
               Defendants.
_____/

ANDREW A. PATERSON (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com
_____/

| There is no other cause of action between the same or similar parties arising out the same transaction or occurrence. |
| --- |

## COMPLAINT AND JURY DEMAND

NOW COME PLAINTIFFS, SHANE ANDERS (**"Plaintiff Anders"),**

STAR TOWING AND RECOVERY, LLC (**"Plaintiff Star Towing"**) and AREA

TOWING AND RECOVERY, INC**. ("Plaintiff Area Towing")**, by and through

their attorney, ANDREW A. PATERSON, and for their Complaint and Jury Demand ("**Complaint**"), states the following:

## I.      NATURE OF PLAINTIFFS' CLAIMS

1. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367; and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

## II.      JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 1983; 28 U.S.C. §§ 1331, 1337, 1343, and 1367.

3. This Court has jurisdiction to render and issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et. seq.*

4. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391 because Plaintiff is a resident of the Eastern District of Michigan, and the actions giving rise to this Verified Complaint all occurred within the Eastern District of Michigan.

## III.      PARTIES

5. Plaintiff, Shane Anders ("**Plaintiff Anders**"), is a registered and qualified elector, and homeowner in the City of Dearborn, County of Wayne, State of Michigan.  Additionally, Plaintiff Anders is also the owner of Plaintiffs Star Towing and Recovery LLC and Area Towing & Recovery Inc.

6. Plaintiff, Star Towing and Recovery LLC ("**Plaintiff Star Towing**") was bought by Plaintiff Anders in 2016 and specializes in towing and storage, and its principal office in the City of Monroe.

7. Plaintiff, Area Towing & Recovery, Inc. ("**Plaintiff Area Towing**"), is a Michigan corporation with offices located at 16550 Racho Road, Taylor, Michigan, that specializes in towing and storage.

8. Defendant, Tony Cuevas ("**Defendant Cuevas**"), was the Post Commander for the Monroe County Post for the Michigan State Police.

9. Defendant, Darzeil Hall ("**Defendant Hall**"), is a Michigan State Trooper.

10. Defendant, Herman "Butch" Ramik ("**Defendant Ramik**"), is a duly elected member of the Taylor City Council.

11. Defendant, Rick Sollars ("**Defendant Sollars**"), is the duly elected Mayor of the Defendant City of Taylor, who is currently under federal criminal investigation by the FBI and U.S. Attorney's office.  All actions taken by Defendant Sollars as alleged in this complaint were done in accordance with powers, duties and responsibilities as assigned to the mayor as set forth the Defendant City of Taylor's City Charter and in accordance with the policies, rules established by the Taylor City Council.

## IV.   CAUSES OF ACTION

### COUNT I
**First-Amendment Retaliation Claim – Defendant Cuevas
Retaliated Against Plaintiff Anders and Star Towing As A Result
of Plaintiff Anders Exercising His First-Amendment Rights.**

12. Plaintiff incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

13. This claim is brought against Defendant Cuevas, in his individual capacity as the Post Commander of the Monroe County Post for the Michigan State Police, pursuant to 42 U.S.C. § 1983.

14. In September 2015, Plaintiff Anders bought Plaintiff Star Towing from a private owner.

15. At the time Plaintiff Anders purchased Plaintiff Star Towing, Plaintiff Star Towing was contracted to conduct tows on behalf of the Michigan State Police and was on the Michigan State Police's non-preference tow rotation list for the Monroe Post.

16. In fact, at the time Plaintiff Anders purchased Star Towing, Plaintiff Star Toing had been towing for the Michigan State Police for close to 15 years.

17. As the duly appointed Post Commander for the Monroe Post, pursuant to the policies, customs, and practices of the Michigan State Police, Defendant Cuevas had the authority to approve or remove tow companies from the

Michigan State Police's non-preference tow rotation list for the Monroe Post.

18. On or about December 14, 2015, Plaintiff Anders was interviewed by First/Lieutenant Tawana Powell from the Michigan State Police's Internal Affairs division regarding tickets Plaintiff Anders had allegedly given to state troopers to sporting events.

19. During the December 14, 2015 interview with Ft./Lt. Tawana Powell from the Michigan State Police's Internal Affairs division, Plaintiff Anders informed Ft./Lt. Tawana Powell that he had kept a list identifying the members Plaintiff Anders had given tickets to.

20. Ft./Lt. Tawana Powell, on behalf of the Michigan State Police, requested the list Plaintiff Anders had compiled and retained and on December 21, 2015, Plaintiff Anders provided the Michigan State Police with the list of names of the state troopers he who had given sporting event tickets to.

21. On November 14, 2017, Plaintiff Anders met again with investigators from the Michigan State Police Internal Affairs division to discuss Plaintiff Anders alleged friendships and interactions with certain state troopers.

22. During his interviews with investigators from the Michigan State Police's Internal Affairs division, Plaintiff Anders provided investigators with a list

of tickets to sporting events, along with seating locations and dates of the event that Plaintiff Anders provided certain state troopers with tickets for.

23. Plaintiff Anders provided internal affairs with the names of approximately 18 state troopers he had given sporting event tickets to.

24. Plaintiff Anders also explained to the Internal Affairs investigators that Plaintiff Anders nor any of his tow companies received any favors or preferential treatment from any state trooper that received sporting-event tickets from him.

25. Each of the state troopers Plaintiff Anders named during the Internal Affairs interviews subsequently received verbal and/or written reprimands from their superiors for receiving the sporting-event tickets.

26. However, after Plaintiff Anders met with investigators from the Michigan State Police's Internal Affairs, state troopers and administrators within the Michigan State Police, including Defendant Cuevas, expressed to Plaintiff Anders that they were not pleased that Plaintiff Anders gave names of the individual state troopers to Internal Affairs investigators.

27. Soon after Plaintiff Anders interviewed with investigators from Internal Affairs and truthfully provided investigators with the names of various state troopers who received sporting-event tickets from Plaintiff Anders, Plaintiff

Anders company, Plaintiff Star Towing was removed from the non-preference tow rotation list by Defendant Cuevas for the Monroe Post.

28. In a letter dated March 15, 2018, Defendant Cuevas sent Plaintiff Anders a letter informing Plaintiff Anders that Plaintiff Star Towing was being removed from the non-preference tow rotation list.

29. After receiving this letter, Plaintiff Anders immediately had his legal counsel contact Defendant Cuevas to get an answer as to why Plaintiff Star Towing was suddenly being removed from the non-preference tow rotation list.

30. In an email dated April 12, 2018, Defendant Cuevas advised Plaintiff Anders that "[t]he decision to remove Star Towing from the MSP non-preference tow rotation was a command decision that I made. In addition, I feel that the public opinion about your business practices, particularly at Area Towing, has created a unique situation for 2018."

31. Defendant Cuevas' April 12, 2018 email also listed various newspaper articles that pertained to the towing scandal involving Gasper Fiore.

32. It is important to note that in each of the news article that Defendant Cuevas listed in his April 12, 2018 email, Plaintiff Anders did not provide a comment to reporters regarding any of the allegations alleged.

33. Despite the fact that Plaintiff Anders and his legal counsel explained to Defendant Cuevas that Plaintiff Anders was not a subject or a target of any

federal criminal investigation involving Gasper Fiore, Defendant Cuevas decided to proceed with removing Plaintiff Anders' newly acquired company, Plaintiff Star Towing from the non-preference towing rotation list.

34. The removal of Plaintiff Star Towing from the non-preference towing rotation list caused Plaintiffs Anders and Star Towing significant financial harm and loss of business.

35. Defendant Cuevas' actions of removing Plaintiff Star Towing from the non-preference towing rotation list was nothing more than retaliation against Plaintiff Anders for cooperating in the Michigan State Police's Internal Affairs investigation in which Plaintiff Anders truthfully disclosed to investigators the names of all state troopers that he had previously given sporting-event tickets to.

36. Additionally, Defendant Cuevas' actions of removing Plaintiff Star Towing from the non-preference towing rotation list was retaliation against Plaintiff Anders for not commenting in published media reports about the federal criminal investigation into Gasper Fiore.

37. Based upon Plaintiff Anders exercising his right to remain silent and not provide the media with a response to questions pertaining to Gasper Fiore, Defendant Cuevas wrongfully assumed that Plaintiff Anders was involved in

possibly unlawful or unethical conduct, and unfairly removed Plaintiff Star Towing from the non-preference tow rotation list.

38. Despite the fact that Plaintiff Anders and his legal counsel provided Defendant Cuevas documentary evidence proving that Plaintiff Anders was not a target nor a subject on any ongoing federal criminal investigation involving Gasper Fiore, Defendant Cuevas chose to rely upon the published media reports in which Plaintiff Anders chose to exercise his right to remain silent and not make a public comment about the allegations.

39. Defendant Cuevas' unlawful actions of retaliating against Plaintiff Anders for exercising his First Amendment Rights have caused Plaintiffs Anders and Star Towing significant harm and financial loss.

40. Accordingly, Plaintiffs Anders and Star Towing seek damages against Defendant Cuevas in excess of $2.5 million.

## COUNT II
### First-Amendment Retaliation Claim – Defendant Hall Retaliated Against Plaintiff Anders and Area Towing As A Result of Plaintiff Anders Exercising His First-Amendment Rights.

41. Plaintiffs incorporate, repeat, and reallege the foregoing allegations as though they were fully set forth and stated herein.

42. This claim is brought against Defendant Hall, in his individual capacity as a state trooper for the Michigan State Police, pursuant to 42 U.S.C. § 1983.

43. Plaintiff Area Towing has been in the towing business for nearly 23 years.

44. On or about December 14, 2015, Plaintiff Anders was interviewed by First/Lieutenant Tawana Powell from the Michigan State Police's Internal Affairs division regarding tickets Plaintiff Anders had allegedly given to state troopers to sporting events.

45. During the December 14, 2015 interview with Ft./Lt. Tawana Powell from the Michigan State Police's Internal Affairs division, Plaintiff Anders informed Ft./Lt. Tawana Powell that he had kept a list identifying the members Plaintiff Anders had given tickets to.

46. Ft./Lt. Tawana Powell, on behalf of the Michigan State Police, requested the list Plaintiff Anders had compiled and retained and on December 21, 2015, Plaintiff Anders provided the Michigan State Police with the list of names of the state troopers he who had given sporting event tickets to.

47. On November 14, 2017, Plaintiff Anders met again with investigators from the Michigan State Police Internal Affairs division to discuss Plaintiff Anders alleged friendships and interactions with certain state troopers.

48. During his interviews with investigators from the Michigan State Police's Internal Affairs division, Plaintiff Anders provided investigators with a list of the number tickets to sporting events, along with seating locations and dates of the event that Plaintiff Anders provided certain state troopers with tickets for.

49. Plaintiff Anders provided internal affairs with the names of approximately 18 state troopers he had given sporting event tickets to.

50. One of the approx. 18 state troopers that Plaintiff Anders provided sporting-event tickets to was Defendant Hall.

51. Plaintiff Anders also explained to the Internal Affairs investigators that Plaintiff Anders nor any of his tow companies received any favors or preferential treatment from any state trooper that received sporting-event tickets from him.

52. Each of the state troopers Plaintiff Anders named during the Internal Affairs interviews, including Defendant Hall, subsequently received verbal and/or written reprimands from their superiors for receiving the sporting-event tickets.

53. Defendant Hall and the other state troopers whose names were revealed by Plaintiff Anders to internal affairs were expressed their anger with Plaintiff Anders for revealing their names to internal affairs.

54. Since that time, Defendant Hall has constantly pressured the staff of Plaintiff Area Towing to schedule and hold an auction during the week when a weekend auction is more suitable and available to be held and scheduled.

55. The harassment and badgering the staff of Plaintiff Area Towing is being subjected to is a result of Defendant Hall retaliating against Plaintiff Anders for revealing Defendant Hall's name during the internal investigation.

56. Plaintiffs Anders and Area Towing were allowed to hold weekend auctions prior to and even after being interviewed by interviewed and revealing the names of certain troopers to internal affairs.

57. However, after the names of the state troopers who received sporting-event tickets became public, Defendant Hall began demanding Plaintiffs Anders and Area Towing hold their auctions during the weekday instead of on the weekends.

58. Defendant Hall's actions are in retaliation of Plaintiff Anders exercising his First Amendment rights by cooperating with the internal affairs investigation of the state troopers who received sporting-event tickets from Plaintiff Anders.

59. By requiring Plaintiff Area Towing to hold auctions during the week, which Plaintiff Area Towing have explained they are unable to do, Plaintiff Anders believes that Defendant Hall is attempting to create a situation by which the Michigan State Police could somehow remove Plaintiff Area Towing from the towing rotation.

60. Accordingly, Plaintiffs Anders and Area Towing are seeking damages against Defendant Hall in excess of $250,000.

### COUNT III
### Equal Protection Claim "Class of One" – Plaintiff Anders Was Denied Equal Protection Under The Law Due to The Personal Animus Defendant Cuevas Has Towards Plaintiff Anders.

61. Plaintiff incorporates, repeats, and realleges the foregoing allegations as though they were fully set forth and stated herein.

62. This claim is brought against Defendant Cuevas, in his individual capacity as the Post Commander of the Monroe County Post for the Michigan State Police, pursuant to 42 U.S.C. § 1983.

63. In September 2015, Plaintiff Anders bought Plaintiff Star Towing from a private owner.

64. At the time Plaintiff Anders purchased Plaintiff Star Towing, Plaintiff Star Towing was contracted to conduct tows on behalf of the Michigan State Police and was on the Michigan State Police's non-preference tow rotation list for the Monroe Post.

65. In fact, at the time Plaintiff Anders purchased Star Towing, Plaintiff Star Toing had been towing for the Michigan State Police for close to 15 years.

66. As the duly appointed Post Commander for the Monroe Post, pursuant to the policies, customs, and practices of the Michigan State Police, Defendant Cuevas had the authority to approve or remove tow companies from the

Michigan State Police's non-preference tow rotation list for the Monroe Post.

67. On or about December 14, 2015, Plaintiff Anders was interviewed by First/Lieutenant Tawana Powell from the Michigan State Police's Internal Affairs division regarding tickets Plaintiff Anders had allegedly given to state troopers to sporting events.

68. During the December 14, 2015 interview with Ft./Lt. Tawana Powell from the Michigan State Police's Internal Affairs division, Plaintiff Anders informed Ft./Lt. Tawana Powell that he had kept a list identifying the members Plaintiff Anders had given tickets to.

69. Ft./Lt. Tawana Powell, on behalf of the Michigan State Police, requested the list Plaintiff Anders had compiled and retained and on December 21, 2015, Plaintiff Anders provided the Michigan State Police with the list of names of the state troopers he who had given sporting event tickets to.

70. On November 14, 2017, Plaintiff Anders met again with investigators from the Michigan State Police Internal Affairs division to discuss Plaintiff Anders alleged friendships and interactions with certain state troopers.

71. During his interviews with investigators from the Michigan State Police's Internal Affairs division, Plaintiff Anders provided investigators with a list

of tickets to sporting events, along with seating locations and dates of the
event that Plaintiff Anders provided certain state troopers with tickets for.

72. Plaintiff Anders provided internal affairs with the names of approximately
18 state troopers he had given sporting event tickets to.

73. Plaintiff Anders also explained to the Internal Affairs investigators that
Plaintiff Anders nor any of his tow companies received any favors or
preferential treatment from any state trooper that received sporting-event
tickets from him.

74. Each of the state troopers Plaintiff Anders named during the Internal Affairs
interviews subsequently received verbal reprimands from their superiors for
receiving the sporting-event tickets.

75. However, after Plaintiff Anders met with investigators from the Michigan
State Police's Internal Affairs, state troopers and administrators within the
Michigan State Police, including Defendant Cuevas, expressed to Plaintiff
Anders that they were not pleased that Plaintiff Anders gave names of the
individual state troopers to Internal Affairs investigators.

76. Soon after Plaintiff Anders interviewed with investigators from Internal
Affairs and truthfully provided investigators with the names of various state
troopers who received sporting-event tickets from Plaintiff Anders, Plaintiff

Anders company, Plaintiff Star Towing was removed from the non-preference tow rotation list by Defendant Cuevas for the Monroe Post.

77. In a letter dated March 15, 2018, Defendant Cuevas sent Plaintiff Anders a letter informing Plaintiff Anders that Plaintiff Star Towing was being removed from the non-preference tow rotation list.

78. After receiving this letter, Plaintiff Anders immediately had his legal counsel contact Defendant Cuevas to get an answer as to why Plaintiff Star Towing was suddenly being removed from the non-preference tow rotation list.

79. In an email dated April 12, 2018, Defendant Cuevas advised Plaintiff Anders that "[t]he decision to remove Star Towing from the MSP non-preference tow rotation was a command decision that I made. In addition, I feel that the public opinion about your business practices, particularly at Area Towing, has created a unique situation for 2018."

80. Defendant Cuevas' April 12, 2018 email also listed various newspaper articles that pertained to the towing scandal involving Gasper Fiore.

81. It is important to note that in each of the news article that Defendant Cuevas listed in his April 12, 2018 email, Plaintiff Anders did not provide a comment to reporters regarding any of the allegations alleged.

82. Despite the fact that Plaintiff Anders and his legal counsel explained to Defendant Cuevas that Plaintiff Anders was not a subject or a target of any

federal criminal investigation involving Gasper Fiore, Defendant Cuevas decided to proceed with removing Plaintiff Anders' newly acquired company, Plaintiff Star Towing from the non-preference towing rotation list.

83. The removal of Plaintiff Star Towing from the non-preference towing rotation list caused Plaintiffs Anders and Star Towing significant financial harm and loss of business.

84. Defendant Cuevas decision to remove Plaintiff Star Towing from the non-preference towing rotation list was due to Defendant Cuevas' personal animus and ill-will he has towards Plaintiff Anders.

85. Defendant Cuevas' personal animus and ill will comes as a result of Plaintiff Anders revealing the names of nearly 18 state troopers during the Michigan State Police's internal investigation.

86. Such actions by Defendant Cuevas have denied Plaintiff equal protection under the law under the "class-of-one" theory.

87. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Tihealth v Bd of Com'rs, Hamilton Co., OH*, 430 F.3d 783, 788 (6th Cir. 2005).

88. "A 'class of one' plaintiff may demonstrate that government lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *Trihealth*, 430 F.3d at 788.

89. "The purpose of the equal protection clause of the Fourteenth Amend is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v Dakota County*, 260 U.S. 441, 445 (1923) (internal citations and quotation marks omitted).

90. In the case at bar, Plaintiff Anders' and Plaintiff Star Towing's equal protection claim is based on the 'class-of-one' theory. Defendant Cuevas treated Plaintiffs Anders and Star Towing differently than other towing vendors that were on the non-preference towing rotation list.

91. As noted, it is apparent that Defendant Cuevas has personal animus and ill-will towards the Plaintiffs Anders and Star Towing because Plaintiff Anders revealed the names of approximately 18 state troopers during the internal investigation. See *Loesel v City of Frankenmuth*, 692 F.3d 452, 466 (6th Cir. 2012) (quoting Webster's Third New International Dictionary Unabridged (2002) ("Animus is defined as 'ill will, antagonism, or hostility

usually controlled but deep-seated and sometimes virulent.' Similarly, ill

will is defined as an 'unfriendly feeling: animosity, hostility.'").

92. As a result of Defendant Cuevas' unlawful and unconstitutional actions,

Plaintiffs Anders and Star Towing seek **damages in excess of $2.5 million.**

## COUNT IV
### First-Amendment Retaliation Claim – Defendant Sollars Retaliated Against Plaintiff Anders For Exercising His First Amendment Rights By Seeking To Have Plaintiffs Anders' and Area Towing's Contract Terminated By The City of Taylor.

93. Plaintiff incorporates, repeats, and realleges the foregoing allegations as

though they were fully set forth and stated herein.

94. This claim is brought against Defendant Sollars, in his official and

individual capacities as the duly elected Mayor of the City of Taylor,

pursuant to 42 U.S.C. § 1983.

95. All actions taken by Defendant Sollars as alleged in this count were done in

accordance with the powers, duties and responsibilities as assigned to the

mayor as set forth in the Defendant City of Taylor's City Charter and in

accordance with the policies, rules and administrative procedures established

by the Taylor City Council.

96. Plaintiff Anders is the sole owner of Plaintiff Area Towing.

97. For the last 20 years, Plaintiff Area Towing has been providing towing

services to the City of Taylor.

98. In November 2007, the City of Taylor entered into an exclusive three-year contract with Plaintiff Area Towing to provide towing services for the City of Taylor.  Plaintiff Area Towing's contract commenced on November 1, 2007 with an initial expiration date of November 1, 2010.

99. However, Plaintiff Area Towing's November 2007 exclusive contract contained two three-year extensions, which could be exercised and extended at the discretion of the Chief of Police for the City of Taylor.

100. In accordance with Plaintiff Area Towing's November 2007 exclusive contract, the Chief of Police for the City of Taylor exercised the two three-year extensions, extending Plaintiff Area Towing's contract through November 1, 2016.

101. However, prior to Plaintiff Area Towing's contract expiring, on October 18, 2016, the Taylor City Council approved a resolution to approve a month-to-month extension of Plaintiff Area Towing's contract until a "RFP for the public procurement of a new contract for motor vehicle towing and storage is issued, the responses to the RFP are evaluated, and a new contract approved by Taylor City Council for motor vehicle towing and storage is awarded to replace Area Towing's current contract."

102. Soon thereafter, on November 14, 2016, the City of Taylor issued an RFP for towing services with proposals due on or before December 1, 2016.

103.    The specifications contained in the RFP issued on November 14, 2016 were drafted by Defendant Sollars and members of his staff in an effort to deliberately eliminate Plaintiff Area Towing from consideration.

104.    Defendant Sollars changed the specifications in the RFP in hopes of eliminating Plaintiff Area Towing from consideration because Defendant Sollars wanted to give the towing business for the City of Taylor to Gasper Fiore and his towing company, B & T Towing.

105.    Plaintiff Anders has first-hand knowledge that Defendant Sollars, exercising the powers delegated to him under the Defendant City's Charter, wanted to steer business to Gasper Fiore and away from Plaintiff Area Towing because of the conversations Plaintiff Anders had with Gasper Fiore and Taylor's former Chief of Police during the summer months of 2016.

106.    In May 2016, Plaintiff Area Towing towed a heavy-duty vehicle without using the assistance of Gasper Fiore and his company, B & T Towing.

107.    Right after the heavy-duty tow was completed, Plaintiff Anders received a phone call on his cell phone from Gasper Fiore.

108.    From Gasper Fiore's tone, Plaintiff Anders concluded that Gasper Fiore was angry about something.  As the conversation continued Gasper

Fiore angrily asked Plaintiff Anders if he had received a heavy-duty tow on Telegraph and Van Born.

109.    Plaintiff Anders advised Gasper Fiore that Plaintiff Anders' company, Plaintiff Area Towing had in fact been assigned to facilitate a heavy-duty tow at Telegraph and Van Born.

110.    Gasper Fiore then proceeded to ask Plaintiff Anders which company did Plaintiff Anders use to facilitate the heavy-duty tow, and Plaintiff Anders replied by stating that Plaintiff Area Towing did the heavy-duty tow in-house with Plaintiff Anders other company, Plaintiff Star Towing.

111.    Gasper Fiore then angrily responded that was not the understanding he had with the Defendant Sollars with respect to any heavy-duty tows in the City of Taylor.

112.    Plaintiff Anders then responded that it was his understanding that if Plaintiff Area Towing could not handle a heavy-duty tow in-house that Defendant Sollars required Plaintiff Anders to call Gasper Fiore so that his company, B & T Towing could facilitate the heavy-duty tow.

113.    During this May 2016 phone conversation, Gasper Fiore further advised Plaintiff Anders that this issue regarding heavy-duty tows was going to cause Plaintiff Anders problems with the Defendant Sollars.

114.    A day after the May 2016 phone conversation with Gasper Fiore, Plaintiff Anders received a call from former Taylor Police Chief Mary Sclabassi and she informed Plaintiff Anders that she was called to the Defendant Sollars' office and that the Defendant Sollars was pissed off about the heavy tow Plaintiff Area Towing had facilitated the day before.

115.    Former Taylor Police Chief Sclabassi further advised Plaintiff Anders that the Defendant Sollars directed her to change the RFP for towing to require heavy-duty capabilities a major component and requirement.

116.    Former Taylor Police Chief Sclabassi further advised Plaintiff Anders that she tried to explain to Defendant Sollars that there were only a few heavy-duty tows a year and that should not be a major factor in the RFP for towing, but Defendant Sollars responded that he did not care.

117.    Soon thereafter, Plaintiff Anders was called to meet with former Taylor Police Chief Sclabassi and Defendant Sollars' chief of staff, Robert Dickerson at the Taylor City hall.

118.    Plaintiff Anders was requested to bring with him to this meeting with former Taylor Police Chief Sclabassi and Robert Dickerson copies of any and all invoices Plaintiff Area Towing issued for the heavy-duty tow that Gasper Fiore called Plaintiff Anders about.

119.     During the meeting, Robert Dickerson asked Plaintiff Anders to explain his charges for the heavy-duty tow.

120.     Prior to May 2016, Plaintiff Anders was directed on two separate occasions by officials from the City of Taylor that Plaintiff Anders must use Gasper Fiore's company, B & T Towing, on all heavy-duty tows.

121.     Plaintiff Anders was advised that this directive that Plaintiff Anders use Gasper Fiore's company, B & T Towing, on all heavy-duty tows, came directly from the Defendant Sollars.

122.     Former Chief of Police Sclabassi advised Plaintiff Anders that the Defendant Sollars directed her that if Plaintiff Area Towing did not use Gasper Fiore's company for all heavy-duty tows that Plaintiff Area Towing's contact would not be renewed.

123.     Upon being told this, Plaintiff Anders expressed to both the former Taylor Chief of Police Sclabassi and corporation counsel for the City of Taylor that Plaintiff Anders did not feel comfortable using any company owned by Gasper Fiore to facilitate heavy-duty tows.

124.     After expressing his displeasure with being directed to use Gasper Fiore's company for heavy-duty tows, Plaintiff Anders was advised that it would be in his best interest to use Gasper Fiore's company for heavy-duty tows.

125.      So that Plaintiff Area Towing would not lose the contract with the
City of Taylor, Plaintiff Anders reluctantly agreed to use Gasper Fiore's
company, B & T Towing, for heavy-duty tows.

126.      As noted, then on November 14, 2016, the City of Taylor issued RFPs
for towing, which contained revised specifications and requirements that
were included with the intent to disqualify Plaintiff Area Towing.

127.      On December 19, 2016, Taylor City Councilman Garza issued a letter
to Defendant Sollars and to the members of the Taylor City Council
outlining his objections to the towing RFP that was unilaterally changed and
altered by Defendant Sollars and members of Defendant Sollars'
administration.

128.      Under protest, Plaintiffs Anders and Area Towing submitted a timely
proposal/bid in response to the City of Taylor's RFP for towing.

129.      On May 31, 2017, Gasper Fiore was indicted by a federal grand jury.

130.      After Gasper Fiore was indicted, former Taylor Chief of Police
Sclabassi sent an email to Chief of Staff Robert Dickerson asking him if she
should send notification to Plaintiff Anders advising them not to use Gasper
Fiore's company, B & T Towing.

131.    Chief of Staff Robert Dickerson responded to former Taylor Chief of

Police Sclabassi by stating that he does not advise contractors who to

subcontract with.

132.    After Gasper Fiore was indicted Plaintiff Anders expressed his

discomfort with having to continue to use Gasper Fiore's company to do

heavy-duty tows.

133.    Soon thereafter, because B & T Towing was no longer an authorized

tower for the Michigan State Police, Plaintiff Anders stopped using Gasper

Fiore's company, B & T Towing, to do heavy-duty tows.

134.    In December 2017, an article was published identifying Plaintiff

Anders as an individual whose conversation with Gasper Fiore was captured

on a federal wiretap.

135.    After the December 2017 article, Plaintiff Anders met with Assistant

U.S. Attorneys and FBI agents for at least 3 hours with his criminal defense

attorney.

136.    During his interview with Assistant U.S. Attorneys and FBI agents,

Plaintiff Anders discussed his conversations with Gasper Fiore, in which

Plaintiff Anders explained that Plaintiff Anders had to keep Gasper Fiore

happy.  Otherwise, Gasper Fiore would call Defendant Sollars, which would

result in Plaintiff Anders being summoned to city hall.

137.     During his interview with Assistant U.S. Attorneys and FBI agents, Plaintiff Anders was asked about Defendant Sollars and his chief of staff, Robert Dickerson.

138.     Plaintiff Anders voluntarily provided the Assistant U.S. Attorneys and FBI agents information about how Defendant Sollars' chief of staff,  Robert Dickerson, changed the towing RFP in Romulus, when Robert Dickerson was chief of staff in Romulus, so that Gasper Fiore's company would be eligible to bid on a towing contract in Romulus.

139.     On March 8, 2018, Plaintiff Anders' criminal defense attorney received a phone call from an Assistant U.S. Attorney informing him that the U.S. Attorney for the Eastern District of Michigan had approved the request that Plaintiff Anders be permitted to state publicly that Plaintiff Anders was not a target nor a subject of a federal criminal investigation.

140.     Then on March 20, 2018, Defendant Sollars requested the Taylor City Council to approve 3 tow companies who had submitted proposals in response to the City of Taylor's 2016 RFP for towing services.

141.     At the March 20, 2018 city council meeting, the Taylor City Council voted not to approve the Defendant Sollars' recommendation to approve 3 tow companies.

142.    Instead, at the March 20, 2018 city council meeting, the Taylor City Council, by a majority vote of 5-to-2, voted to approve a three-year contract for Plaintiff Area Towing to serve as the primary towing contractor for the City of Taylor, and approved J &M towing as the sole heavy-duty towing subcontractor.

143.    However, on March 23, 2018, pursuant to Article 7.13 of the Defendant Taylor's City Charter, Defendant Sollars, exercising his powers as Mayor under the City Charter, vetoed the Taylor  City Council's March 20, 2018 resolution, which authorized the City of Taylor to enter into a three-year contract with  Plaintiff Area Towing for towing services.

144.    Defendant Sollars actions towards Plaintiffs Anders and Area Towing, which included vetoing Plaintiffs' contracts as approved by the City Council, were in retaliation against Plaintiff Anders for exercising his First Amendment Rights.

145.    Specifically, Defendant Sollars vetoed the Taylor City Council's March 20, 2018 resolution, which authorized a three-year contract for Plaintiff Area Towing, because Plaintiff Anders refused to give Defendant Sollars campaign contributions during the RFP process.

146.    Additionally, Defendant Sollars vetoed the Taylor City Council's March 20, 2018 resolution, which authorized a three-year contract for

Plaintiff Area Towing, because Plaintiff Anders spoke out against and complained to city officials about being forced and directed to use Gasper Fiore for heavy-duty tows.

147.    Lastly, Defendant Sollars vetoed the Taylor City Council's March 20, 2018 resolution, which authorized a three-year contract for Plaintiff Area Towing, because Plaintiff Anders provided information to the FBI and the U.S. Attorney about Defendant Sollars' unlawful and unethical conduct.

148.    Defendant Sollars' unlawful and unconstitutional actions caused Plaintiffs Anders and Area Towing significant financial harm.

149.    Accordingly, Plaintiffs Anders and Area Towing seek damages against Defendant Sollars, in both his individual and official capacities, in excess of $2.5 million.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff prays that this Honorable Court GRANT the following relief:

A. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 declaring that Defendant Cuevas, in his individual capacity, retaliated against Plaintiffs for exercising their First Amendment Rights.

B. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 declaring that Defendant Hall, in his individual capacity, retaliated against Plaintiffs for exercising their First Amendment Rights.

C. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 declaring Plaintiffs were denied equal protection under the law under the class of one theory by Defendant Cuevas.

D. Issue a declaratory judgment pursuant to 42 U.S.C. §1983 declaring that Defendant Sollars, in his individual and official capacities, retaliated against Plaintiffs for exercising their First Amendment Rights.

E. Pursuant to 42 U.S.C. §1983, award Plaintiffs damages in excess of $2.5 million dollars for Defendant Cuevas, in his individual capacity, retaliating against Plaintiffs for exercising their First Amendment Rights.

F. Pursuant to 42 U.S.C. §1983, award Plaintiffs damages in excess of $2.5 million dollars for Defendant Hall, in his individual capacity, retaliating against Plaintiffs for exercising their First Amendment Rights.

G. Pursuant to 42 U.S.C. §1983, award Plaintiffs damages in excess of $2.5 million for Defendant Hall denying Plaintiffs equal protection under the law under the class of one theory.

H. Pursuant to 42 U.S.C. §1983, award Plaintiffs damages in excess of $2.5 million dollars for Defendant Sollars retaliating against Plaintiff for exercising his First Amendment Rights.

I. Award Plaintiffs costs and attorney's fees pursuant to 42 U.S.C. §1988.

J. Grant any further relief the Court deems appropriate, just and proper.

Dated: April 3, 2019                    Respectfully submitted,

/s/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**SHANE ANDERS,**
**STAR TOWING AND RECOVERY, LLC,** and
**AREA TOWING AND RECOVERY, INC.**
　　　　　　Plaintiffs,　　　　　　　　　**Case No. 19-cv-**
　　　　　　　　　　　　　　　　　　　　**HON.**

v.

**TONY CUEVAS,** in his individual capacity as Post Commander for the Michigan
State Police,
**DARZEIL HALL**, in his individual capacity as a Michigan State Trooper,
**CITY OF TAYLOR,**
**HERMAN "BUTCH" RAMIK**, in his individual and official capacities as an
elected member of the Taylor City Council, **and**
**RICK SOLLARS,** in his individual and official capacities as the elected Mayor of
the City of Taylor**,**
　　　　　　Defendants.
_____/

ANDREW A. PATERSON (P18690)
Attorney for Plaintiffs
2893 E. Eisenhower Pkwy
Ann Arbor, MI 48108
(248) 568-9712
aap43@outlook.com
_____/

## **DEMAND FOR JURY TRIAL**

NOW COME PLAINTIFFS, SHANE ANDERS (**"Plaintiff Anders"**),

STAR TOWING AND RECOVERY, LLC (**"Plaintiff Star Towing"**) and AREA

TOWING AND RECOVERY, INC**. ("Plaintiff Area Towing")**, by and through

their attorney, ANDREW A. PATERSON, and pursuant to Fed.R.Civ.P. 38,

hereby demand a jury trial on all the issues so triable by a jury as pled in Plaintiffs'

complaint.

Dated: April 3, 2019                              Respectfully submitted,

                                                  */s/ ANDREW A. PATERSON*
                                                  ANDREW A. PATERSON (P18690)
                                                  Attorney for Plaintiffs