UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANE ANDERS, STAR TOWING
AND RECOVERY, LLC, and
AREA TOWING AND RECOVERY, INC.,

    Plaintiffs,

v.

TONY CUEVAS, in his individual capacity
as Post Commander for the Michigan State
Police, DARZEIL HALL, in his individual
Capacity as a Michigan State Trooper,
CITY OF TAYLOR, HERMAN "BUTCH"
RAMIK, in his individual and official
Capacities as an elected member of the
Taylor City Council, and RICK SOLLARS,
in his individual and official capacities as
the elected Mayor of the City of Taylor,

    Defendants.
_____/

Case No. 19-10989

Hon. George Caram Steeh

OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR
<u>JUDGMENT ON THE PLEADINGS (ECF NO. 34)</u>

    Before the court is the City of Taylor Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Previously, the court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6). ECF No. 23.

-1-

Plaintiffs filed an amended complaint on October 15, 2019, which Defendants answered. On November 1, 2019, Defendants filed the instant motion, which has been fully briefed. Given the court's familiarity with facts and issues, the court determined that its resolution of this motion would not be aided by oral argument. See L.R. 7.1(f)(2).

BACKGROUND FACTS

Shane Anders is the owner of Plaintiff Area Towing and Recovery, Inc. In the amended complaint, Plaintiffs allege that Defendant Rick Sollars, who is the mayor of the City of Taylor, retaliated against Area Towing for exercising its First Amendment rights. ECF No. 30, Count IV. Plaintiffs also allege a First Amendment retaliation claim and a defamation claim against Herman "Butch" Ramik, a member of the Taylor City Council. *Id.* at Counts V, VI.

Specifically, Plaintiffs allege that Sollars wanted to steer city towing business to Gasper Fiore and away from Area Towing. Anders was required to use Fiore's company for heavy-duty tows at the direction of Sollars. Although Anders complained to the city police chief and corporation counsel that he did not feel comfortable using Fiore's company, he was advised that it would be "in his best interest" to do so and that if he

-2-

did not, his contract would not be renewed. *Id.* at ¶¶ 128-33.[1] After Fiore was indicted, Anders cooperated in the investigation conducted by the FBI and the U.S. Attorney's office.

On March 20, 2018, the Taylor City Council voted to approve a three-year contract for Area Towing to serve as the primary towing contractor for the city. Sollars vetoed the resolution. Plaintiffs contend that Sollars vetoed the resolution because Anders refused to give him campaign contributions, he complained about being forced to use Fiore for heavy-duty tows, and he provided information to the FBI and the U.S. Attorney about Sollars's conduct. *Id.* at ¶¶ 152-55. Plaintiffs assert a First Amendment retaliation claim against Sollars in his individual and official capacities.

Plaintiffs also allege a First Amendment retaliation claim against Ramik in his individual and official capacities. Ramik moved to terminate Area Towing's contract with the City of Taylor on October 16, 2018, a motion that ultimately failed. Plaintiffs contend that Ramik took this action in retaliation for Anders's criticism of Ramik at a city council meeting. ECF

---

[1] Gasper Fiore owns a towing company and was indicted in 2017 as part of a bribery conspiracy involving Dean Reynolds, a Clinton Township trustee. Fiore pleaded guilty to bribing Reynolds by providing cash in exchange for a towing contract with Clinton Township. See Case No. 16-20732 (E.D. Mich.).

No. 30 at ¶¶ 179-80. Plaintiffs also allege that Ramik falsely stated in a Fox 2 news story that he received complaints from residents about Area Towing and accused Anders of "victimizing and stealing from" city residents. *Id.* at ¶ 189. Based upon these facts, Plaintiffs assert a defamation claim against Ramik.

## LAW AND ANALYSIS

I. Standard of Review

Defendants seek dismissal of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(c). The court reviews a motion brought pursuant to Rule 12(c) under the same standard as a motion brought pursuant to Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). In doing so, the court construes the complaint "in the light most favorable to the plaintiffs, accept[s] all of the complaint's factual allegations as true, and decide[s] whether the plaintiffs can prove any set of facts in support of their claims that would entitle them to relief." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to

"state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

II. First Amendment Retaliation – Individual Capacity Claims

Defendants argue that Area Towing's retaliation claims against Sollars and Ramik in their individual capacities are barred by absolute or qualified immunity. Alternatively, Defendants contend that Area Towing has failed to state an actionable retaliation claim.

A. Absolute Immunity

Local legislators are "absolutely immune from suit under § 1983 for their legislative activities." *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000) (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)). The rationale for this rule is that "the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." *Id.* (quoting *Bogan*, 523 U.S. at 52). Legislators performing "traditionally executive or administrative discretionary functions" are not entitled to absolute immunity, but may be entitled to qualified immunity.

*Muslim Community Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Twp.*, 947 F.Supp.2d 752, 759 (E.D. Mich. 2013).

In determining whether an act is "legislative," the court looks to the nature of the act, "without regard to the legislators' subjective intent." *Canary*, 211 F.3d at 329. The court considers the form of the act, whether it is an "integral step in the legislative process," as well as whether the act is "legislative in substance." *Guindon v. Township of Dundee, Mich.*, 488 Fed. Appx. 27 at *4 (6th Cir. 2012) (citing *Bogan*, 523 U.S. at 54-56). Legislative acts bear "all the hallmarks of traditional legislation," including "a discretionary, policymaking decision implicating budgetary priorities of the city and the services the city provides to its constituents." *Id.* (quoting *Bogan*, 523 U.S. at 55-56). Acts that establish general policy, as opposed to singling out a specific individual, are legislative. *See Canary*, 211 F.3d at 330-31 (distinguishing the termination of a specific individual from the elimination of a position); *Leapheart v. Williamson*, 705 F.3d 310, 314 (8th Cir. 2013) (hiring and firing of specific individuals are administrative, not legislative); *Bagley v. Blagojevich*, 646 F.3d 378, 394-95 (7th Cir. 2011) (elimination of position for budgetary reasons held to be legislative); *Haskell v. Washington Twp.*, 864 F.2d 1266, 1278 (6th Cir. 1988),

*abrogated on other grounds by Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (zoning action that singles out specific individuals is administrative).

Plaintiffs allege that the Taylor City Council passed a resolution that authorized a three-year contract for Area Towing. Sollars vetoed that resolution, an action that is part of the legislative process. As described in the complaint, however, the substance of the action applied to and specifically affected only Area Towing. Defendants frame Sollars's veto as dealing with the question of whether towing services in the city should be awarded to one vendor or multiple vendors, which would appear to be legislative in substance. The complaint, however, does not allege that the resolution vetoed by Sollars addressed the issue as framed by Defendants, but rather alleges that the resolution approved a three-year contract for Area Towing as the primary towing contractor. ECF No. 30 at ¶¶ 150-51. According to the complaint, the resolution and Sollars's veto did not address a general policy or budgetary issue, but specifically applied to and singled out Area Towing, making these actions more administrative than legislative in substance, analogous to hiring or firing a particular individual. *See Canary*, 211 F.3d at 329-30 (resolution adopted by board to not renew contract was not legislative). The facts may develop differently, but at this stage of the proceedings, Defendants have not carried their burden of

demonstrating that absolute immunity applies to Sollars's actions. *See id.* at 328 ("It is the defendants' burden to establish the existence of absolute legislative immunity.").

With regard to Ramik, Plaintiffs concede that he enjoys absolute legislative immunity for his actions with respect to Plaintiffs' First Amendment retaliation claim against him in his individual capacity. Accordingly, the court will not reach this issue. See ECF No. 37 at PageID 388. The court will dismiss Plaintiffs' First Amendment retaliation claim against Ramik in his individual capacity.

B. Qualified Immunity

Defendants also argue that Sollars is entitled to qualified immunity. "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citation omitted). To overcome the defense of qualified immunity, a plaintiff must show that (1) the defendant violated a constitutional right; and (2) that right was clearly established. *See Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680-81 (6th Cir. 2013). Once a defendant has invoked qualified immunity, it is the plaintiff's burden to demonstrate that the defendant is not entitled to it. *Id.*

### 1. Constitutional Violation

Defendants contend that Area Towing has failed to state an actionable claim for First Amendment retaliation. To allege such a claim, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took adverse action against him that would "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) there is a causal connection between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants do not contest that Plaintiffs have alleged protected conduct and causation. Defendants assert that Area Towing did not suffer an adverse action, because although Sollars vetoed a three-year contract, the company continues to do business with the city on a month-to-month basis.

An adverse action is one that "would deter a person of ordinary firmness from continuing to engage" in the protected activity. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). "We emphasize that while certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id.* at 701 (citing *Thaddeus-X*, 175 F.3d at 398).

Although Area Towing continues to do business with the city, the court cannot find that the loss of the security and stability of a three-year contract is so inconsequential as to warrant dismissal at this stage of the proceedings. *See Siggers-El*, 412 F.3d at 701 ("[S]ince there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable.") (citation omitted); *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("[U]nless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury."). Plaintiffs have sufficiently alleged a First Amendment violation.

### 2. Clearly Established Right

Plaintiffs must also demonstrate that Sollars violated a clearly established right. "A right is 'clearly established' if '[t[he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (citation omitted). Clearly established law is "not defined at a high level of generality but must be particularized to the facts of the case." *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019). In other words, "the unlawfulness must be apparent" in light of pre-existing law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Defendants argue that it was not clearly established in 2018 that a "veto/motion could give rise to a viable § 1983 claim." ECF No. 34 at PageID 364. As discussed above, however, in the context of absolute legislative immunity, the court considers both the form and substance of the action at issue. Absolute immunity is not based upon the position or motivation of the official, but the nature of the action taken. *See, e.g., Canary*, 211 F.3d at 330 (board's vote to not renew school employee's contract was administrative rather than legislative). Defendants cite no authority for the proposition that a mayor's veto, in itself, is entitled to absolute immunity regardless of the substance of the act. *Cf. Bagley*, 646 F.3d at 391-95 (line-item veto eliminating management positions determined to be a legislative act because it targeted positions rather than particular employees).

Defendants further argue that it was not clearly established that Area Towing, as opposed to Anders individually, engaged in conduct protected by the First Amendment. In support, Defendants point to the court's observation in its previous opinion that "it is not clear from the complaint whether Anders engaged in protected activity as an agent of the towing companies." ECF No. 34 at PageID 364. This language does not support Defendants' argument. The court was not discussing clearly established

law, but whether Plaintiffs clearly alleged certain facts. Further, the court was analyzing Plaintiffs' claim against the State of Michigan Defendants, not the City of Taylor Defendants. ECF No. 23 at PageID 187. The cited discussion does not apply to the City of Taylor Defendants. In any event, Plaintiffs amended their complaint to clarify that Anders engaged in protected activity as an agent of the towing companies, rendering Defendants' argument moot.

Plaintiffs have alleged that Sollars vetoed the city's three-year contract with Area Towing in retaliation for Anders's refusal to contribute to his campaign, complaints about having to use Fiore's company, and for his cooperation in a federal investigation. A reasonable official would understand that such actions violate the First Amendment.

The law regarding Anders/Area Towing's protected activity, and the prohibition on retaliating against those engaging in protected activity, is clearly established. Anders's refusal to contribute to Sollars's campaign is protected activity. "The right of political association with a particular campaign is a clearly established right." *Sowards v. Loudon Cty., Tenn.*, 203 F.3d 426, 439 (6th Cir. 2000). Plaintiffs' alleged criticism of city practices, such as the requirement that Area Towing use Fiore's company for heavy tows, is also protected by the First Amendment. "[T]he First

Amendment right to criticize public officials is well-established and supported by ample case law." *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997). Similarly, Plaintiffs' cooperation with the FBI investigation is protected by the First Amendment. *See v. City of Elyria*, 502 F.3d 484 (6th Cir. 2007) (statements to FBI protected by the First Amendment); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) (cooperation in an investigation is protected activity under the First Amendment).

Further, the "law is well-settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional." *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) (mayor violated First Amendment by harassing individual who had publicly criticized him); *Barrett*, 130 F.3d at 264. *See also Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010) (official's refusal to issue permit to private business after owner sought assistance of city councilman was found to be a First Amendment violation).

Plaintiffs' complaint sufficiently alleges a violation of clearly established law. A reasonable official in Sollars's position would understand that vetoing a contract with the city because of the person's protected activity is a First Amendment violation. Sollars is not entitled to qualified immunity.

III. Official Capacity Claims/City of Taylor

Plaintiffs also assert First Amendment retaliation claims against Sollars and Ramik in their official capacities, which is a claim against the City of Taylor. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In order to establish municipal liability under § 1983, a plaintiff must point to a municipal policy or custom that is behind the constitutional violation. *See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Plaintiffs argue that Sollars's veto and Ramik's (unsuccessful) motion reflect or establish city policy. Under "appropriate circumstances," a single decision by municipal policymakers may form the basis for municipal liability, such as when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 480-82. When an official's decision is reviewable, however, the

-14-

official is not the final policymaker with respect to that action. For example, when a city council has the power to override a mayor's veto, the mayor is not considered to be the final policymaker for the city. *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637-38 (11th Cir. 1991); *Advanced Tech. Bldg. Solutions, L.L.C. v. City of Jackson, Miss.*, 817 F.3d 163, 165-67 (5th Cir. 2016).

Here, the Taylor City Charter provides the mayor with the authority to veto ordinances or resolutions adopted by the City Council. Taylor City Charter § 7.13. The charter also gives the City Council the power to override the mayor's veto. *Id.* As a result, Mayor Sollars's veto, even if not overridden, does not represent city policy. *See Lomelo*, 929 F.2d at 627. Nor does Ramik's motion; the council's failure to adopt his proposal demonstrates that it, not Ramik, was the final policymaker on that issue.

Plaintiffs have not sufficiently alleged that a custom or policy of the City of Taylor was the moving force behind the alleged constitutional violations. Therefore, the court will dismiss Plaintiffs' official capacity claims against Sollars and Ramik and the municipal liability claim against the City of Taylor.

IV. Defamation Claim against Ramik

Defendants also seek dismissal of Plaintiffs' defamation claim against Ramik. The elements of a defamation claim are as follows: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Smith v. Anonymous Joint Enter.*, 487 Mich. 102, 113 (2010).

Plaintiffs allege that Ramik made false statements about Anders and Area Towing during a Fox 2 News story that aired on March 27, 2018.[2] Ramik "falsely stated that he had received a lot of complaints from residents" about Area Towing and "accused Plaintiff Anders of victimizing and stealing from the residents" of Taylor. ECF No. 30 at ¶¶ 186-89. Defendants suggest that these statements are not actionable because they are statements of opinion or "relayed information" from another source (concerned citizens). It is well established, however, that "words charging

---

[2] Defendants attached a Fox 2 news article dated April 4, 2018, to their brief. ECF No. 34-1. This article does not appear to be the identical story referred to in the complaint, which aired on March 27, 2018. ECF No. 30 at ¶¶ 188-89. Under Rule 12(c), the court will not consider evidence outside of the pleadings. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006).

-16-

the commission of a crime are defamatory per se." *Burden v. Elias Bros. Big Boy Restaurants*, 240 Mich. App. 723, 727-28 (2000).

Defendants next argue that Ramik is entitled to governmental immunity under state law. *See* M.C.L. 691.1407(5). Legislators and other government officials are immune from tort liability for actions taken "within the scope" of their "judicial, legislative, or executive authority." *Id*. Whether a public official is acting within the scope of his or her authority "depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *American Transmissions, Inc v. Attorney Gen.*, 454 Mich. 135, 141 (1997) (citation omitted). "This list of factors, while not exhaustive, demonstrates the type of objective inquiry into the factual context that is necessary to determine the scope of the actor's executive [or legislative] authority." *Petipren v. Jaskowski*, 494 Mich. 190, 206 (2013). It is the individual governmental employee's burden to establish his entitlement to immunity by demonstrating that he acted within the scope of his authority. *Id.* at 204.

In support of his claim of immunity, Ramik relies upon *Chupa v. Moceri*, 2010 WL 746243 (Mich. App. Mar. 4, 2010). In *Chupa*, the

Michigan Court of Appeals found that city council members' statements to newspapers about "matters before the City Council" were within their legislative authority. *Id.* at *4. Ramik asserts that his statements regarding Plaintiffs were about Area Towing's contract with the city, which was a matter before the city council. At this stage of the proceedings, however, the factual context surrounding Ramik's statements is not clear. Moreover, Ramik has not set forth "the charter, ordinances, or other local law" defining his authority. Although the *Chupa* court appeared to assume that "speaking of matters before the City Council" was sufficient to confer immunity, its analysis did not consider the factors set forth in *American Transmissions. See Estill v. Davis*, 2012 WL 1697023 at *2-3 (Mich. App. 2012) (reviewing school board's bylaws in determining whether a school board member acted within his authority by speaking to the media); *Information Sys. Intelligence, LLC, v. Eisenbarth*, 2018 WL 442704 at *1, 4 (Mich. App. 2018) (considering rules of the county board of commissioners in determining scope of authority of county administrator). The record before the court is insufficient for the court to make a determination regarding the scope of Ramik's authority.

## ORDER

IT IS HEREBY ORDERED that Defendants' motion for judgment on the pleadings (ECF No. 34) is GRANTED IN PART with respect to Plaintiffs' First Amendment retaliation claim against Ramik in his individual capacity and against the City of Taylor.  IT IS FURTHER ORDERED that Defendants' motion is DENIED IN PART with respect to Plaintiffs' First Amendment retaliation claim against Sollars in his individual capacity and the defamation claim against Ramik.

Dated:  January 23, 2020

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 23, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk