UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANE ANDERS, et al.,

    Plaintiffs,

v.

    Case No. 19-cv-10989
    Honorable Linda V. Parker

RICK SOLLARS,

    Defendant.
_____/

## OPINION AND ORDER DENYING NON-PARTY GASPER FIORE'S MOTION TO INTERVENE, FOR PROTECTIVE ORDER, AND TO SEAL

### Background

This lawsuit arises in part from a towing contract between Plaintiff Area Towing and Recovery, Inc. ("Area Towing") and the City of Taylor. Plaintiff Shane Anders is the owner of Area Towing. Plaintiffs allege that Defendant Rick Sollars, as the Mayor of Taylor, vetoed the renewal of Area Towing's contract due in part to Anders' cooperation with an FBI investigation of Gasper Fiore and others. During the investigation, the FBI captured conversations through wiretaps conducted pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-23. The investigation led to the prosecution of Mr. Fiore and other individuals for various federal crimes, and Mr. Fiore eventually pleading guilty to conspiracy to defraud the United States. *See*

Plea Agreement, *United States v. Fiore*, No. 16-cr-20732 (E.D. Mich. Aug. 7, 2018), ECF No. 144.

During the current civil proceedings, Area Towing issued a federal subpoena requesting the production of documents from the FBI relating to the federal criminal investigation of Mr. Fiore. (*See* ECF No. 111 at PageID.2376-77.) The FBI and the United States Attorney's Office for the Eastern District of Michigan (hereafter "government") authorized the production of certain documents responsive to the subpoena. (*See id.*) The parties here then stipulated to a protective order to address the treatment of the names and other identifying information of individuals contained in those documents in order to comply with the Privacy Act, 5 U.S.C. § 552a, which the Court entered on September 3, 2025. (*Id.*)

Also during the current civil proceedings, Plaintiffs served deposition subpoenas on Mr. Fiore and Jennifer Marie Fiore. The depositions were scheduled for December 4, 2025. However, when Plaintiffs moved for alternative service of the subpoenas shortly before that date and a conference call was convened to address the motion, the Court believed, based on its conversation with the parties, that the deposition would be moved to a later date to afford the Fiores more notice of their need to appear. The subpoenas, however, did not reflect a later date. For that reason, and because Mr. Fiore objects to the government's production of the

wiretap information, he filed a "Motion to Intervene, for Protective Order and to Seal" on December 2. (ECF No. 120.)

In the motion, Mr. Fiore asks the Court to quash or modify the subpoena, arguing that it "fails to allow a reasonable time to comply[.]" (*Id.* at PageID.2488 (quoting Fed. R. Civ. P. 45(d)(3).) Most of Mr. Fiore's brief in support of the motion, however, is focused on his objection to the release of the materials obtained through the FBI's wiretap. Mr. Fiore argues that the materials should not have been released in these civil proceedings and should be "clawed back and sealed." Ms. Fiore has filed a notice of joinder in the motion. (ECF No. 123.)

## Discussion

Title III sets forth "a comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972) (citation omitted). To effectively protect "the privacy of wire and oral communications" and "the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce," in Title III, Congress "define[d] on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, . . . prohibit[ed] any unauthorized interception of such communications, and the use of the contents thereof in evidence in court and administrative proceedings." *Id.* 49 (quotation marks and citation omitted).

3

Specifically, "[T]itle III prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause." *Id.* at 48 (quotation marks and citation omitted). Intentionally intercepting wire, oral, or electronic communications without authorization under Title III is unlawful. *See* 18 U.S.C. § 2511(1). Intentionally disclosing the contents of unauthorized intercepts also is unlawful. *See id.*

Under Title III, the fruits of lawful wiretaps can be used or disclosed in proscribed circumstances. *See* 18 U.S.C. § 2517. First, an "investigative or law enforcement officer who, by any means authorized by [Title III], has obtained knowledge" of a wiretap's contents can use the information or disclose it to another officer when doing so is "appropriate to the proper performance" of either officer's official duties. *Id.* § 2517(1)-(2), (5). Second, a "person who has received, by any means authorized by [Title III], any information" about a wiretap's contents "may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." *Id.* § 2517(3). Third, disclosure is lawful when the nation's security is at risk. *See id.* § 2517(6)-(8).

4

With respect to the second circumstance, courts have viewed the language in § 2517(3) as broad, but have nonetheless found "certain that Congress did not intend to create 'a general civil discovery mechanism." *Oakland Cnty v. City of Detroit*, 610 F. Supp. 364, 368 (E.D. Mich. 1984) (quoting *Nat'l Broad. Co. v. U.S. Dep't of Justice*, 735 F.2d 51, 54 (2d Cir. 1984)). In *National Broadcasting Company v. United States* (hereafter "*NBC*"), the Second Circuit therefore upheld the district court's finding that it lacked authority under § 2517(3) to compel the government to release surveillance material gathered pursuant to Title III, where the government opposed the disclosure. 735 F.2d at 54-55. In reaching this decision, the Second Circuit found that § 2517(3) contemplates that the government, not the courts, should decide whether to release wiretap material:

> Under Title III, with few exceptions not here relevant, no one other than the government can lawfully engage in wiretapping and it therefore is not so unusual that only the government can enjoy its fruits. Beyond that, the government is in a position to make a judgment whether disclosure of the intercepted evidence will or will not be in accordance with the overall public interest, while a private litigant is not.

*Id.*

Here, the government did not object to the disclosure of the surveillance materials but, instead, produced materials in response to Plaintiffs' subpoena. By doing so, the government exercised its judgement about whether the disclosure would or would not be in accordance with the overall public interest, a decision

5

which the *NBC* court indicated was within the government's authority to decide. 735 F.2d at 54. This Court must further presume, absent evidence to the contrary, that the government determined that the disclosure was authorized under § 2517— i.e., that it was lawful.

As relevant to that determination, Title III does not apply to materials previously disclosed to the public incident to, or after, their use under § 2517." *S.E.C. v. Rajaratnam*, 622 F.3d 159, 176 (2d Cir. 2010) (quoting *In re Newsday, Inc.*, 895 F.2d 74, 78 (2nd Cir. 1990)). A common scenario is when wiretap information has already been used as evidence in a criminal trial. *See id.* at 180 (reasoning that a civil discovery request for wiretap information in one party's possession was consistent with Title III); *United States v. Rosenthal*, 763 F.2d 1291, 1294 (11th Cir. 1985) (holding that "Title III creates no independent bar to the public's right of access to . . . wiretap materials legally intercepted and admitted into evidence pursuant to the statute"). As the court explained in *Oakland County v. City of Detroit*: "Section 3517(3) prescribes the proper method of disclosure of surveillance material. Once the material has been revealed, however, the purpose of Section 2517(3) ceases and the requirements of that section no longer govern." *Id.* at 369. "Under such circumstances, the privacy interests of the defendants cannot stand as an obstacle to the public's access to evidence admitted in open court." *Id*. (collecting cases).

6

For those reasons, the Court rejects the Fiores' objections to the production of the surveillance materials. Because the Court previously instructed Plaintiffs to move the date of the Fiores' deposition, and it appears that was done after the present motion was filed, their request to adjourn the deposition to a later date is moot.

Accordingly,

**IT IS ORDERED** that Mr. Fiores' Motion to Intervene, for Protective Order and to Seal (ECF No. 120) is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: December 12, 2025