**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHANE ANDERS, STAR TOWING AND
RECOVERY, LLC, and AREA TOWING
AND RECOVERY, INC.,

        Plaintiffs,

v.

TONY CUEVAS, in his individual capacity as
Post Commander for the Michigan State Police,
DARZEIL HALL, in his individual capacity as
a Michigan State Trooper, CITY OF TAYLOR,
HERMAN "BUTCH" RAMIK, in his individual
and official capacities as an elected member of
the Taylor City Council, and RICK SOLLARS,
in his individual and official capacities as the
elected Mayor of the City of Taylor,

        Defendants.

Case No. 2:19-cv-10989
Hon. Linda V. Parker
Mag. Elizabeth A. Stafford

---

**DEFENDANT RICK SOLLARS' MOTION FOR SUMMARY
<u>JUDGMENT PURSUANT TO FED. R. CIV. P. 56</u>**

---

Defendant, Rick Sollars, through his counsel, Giarmarco, Mullins & Horton,

P.C., moves for summary judgment on the one remaining claim (i.e., Count IV, First

Amendment Retaliation) pled against him by Plaintiff, Area Towing and Recovery,

LLC, in its Amended Complaint.[1] This Motion is being filed under Fed. R. Civ. P. 56

and the caselaw cited *infra* in Defendant's Brief in Support. Pursuant to L.R. 7.1, the

---

[1] *See* Amended Complaint, ECF No. 30.

undersigned spoke with Plaintiff's counsel, Todd Perkins, on 3/04/26 and asked if he would concur in the relief requested herein; concurrence was denied.

I certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10.5 characters per inch (for no-proportional fonts) or 14 pint (for proportional fonts). I also certify that it is the appropriate length under Local Rule 7.1(d)(3).

GIARMARCO, MULLINS & HORTON, P.C.

By:   /s/ Geoffrey S. Wagner
Geoffrey S. Wagner (P70839)
*Attorney for Defendant Sollars*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084
(248) 457-7000; Fax: (248) 457-7001
gwagner@gmhlaw.com

Dated: March 26, 2026

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHANE ANDERS, STAR TOWING AND
RECOVERY, LLC, and AREA TOWING
AND RECOVERY, INC.,

        Plaintiffs,

v.

TONY CUEVAS, in his individual capacity as
Post Commander for the Michigan State Police,
DARZEIL HALL, in his individual capacity as
a Michigan State Trooper, CITY OF TAYLOR,
HERMAN "BUTCH" RAMIK, in his individual
and official capacities as an elected member of
the Taylor City Council, and RICK SOLLARS,
in his individual and official capacities as the
elected Mayor of the City of Taylor,

        Defendants.

Case No. 2:19-cv-10989
Hon. Linda V. Parker
Mag. Elizabeth A. Stafford

---

**BRIEF IN SUPPORT OF DEFENDANT RICK SOLLARS'
MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................iii

STATEMENT OF THE ISSUES PRESENTED ..........................................vii

MOST CONTROLLING AUTHORITIES...................................................viii

STATEMENT OF MATERIAL FACTS.........................................................1

    A.    Introduction ....................................................................................1

    B.    Factual Background.........................................................................2

        1.    Area Towing and the City of Taylor...............................2

        2.    The Amended Complaint ................................................4

        3.    The Fox 2 News Story .....................................................4

    C.    Procedural Background ...................................................................6

    D.    Pertinent Deposition Testimony ...................................................8

    E.    FBI Records ..................................................................................10

    F.    The 2025 Lawsuit .........................................................................12

APPLICABLE LEGAL STANDARD ...........................................................13

ARGUMENT ..................................................................................................14

    I.    AREA TOWING HAS FAILED TO ESTABLISH A GENUINE
        ISSUE OF MATERIAL FACT ....................................................14

        A.    The 'Form' of the Mayor's Veto was Legislative in
            Nature..............................................................................16

        B.    The 'Substance' of the Mayor's Veto was Legislative in
            Nature..............................................................................17

1.      Other District Courts Have Applied Legislative
        Immunity to Similar Executive Decisions............................17

2.      Plaintiff's Anticipated Reliance On The *Canary*
        Case is Misplaced...................................................................18

II.     THE RECENT TERMINATION OF AREA TOWING'S
        MONTH-TO-MONTH CONTRACT IS AN INTERVENING
        CAUSE BARRING, IN WHOLE OR IN PART, PLAINTIFF'S
        CLAIM AGAINST SOLLARS ...................................................21

III.    AREA TOWING'S RETALIATION CLAIM IS BARRED BY
        THE DOCTRINE OF QUALIFIED IMMUNITY ..............................23

CONCLUSION AND RELIEF REQUESTED ............................................25

# INDEX OF AUTHORITIES

## Cases

*Alexander v. CareSource,*
  576 F.3d 551 (6th Cir. 2009) ..................................................................... 14

*Anders v. Cuevas,*
  984 F.3d 1166 (6th Cir. 2021) .................................................................7, 15

*Arabbo v. City of Burton,*
  689 Fed.Appx. 418 (6th Cir. 2017).............................................................. 20

*Area Towing v. Sollars,*
  984 F.3d 1166 (6th Cir. 2020) .................................................................... 16

*Atchison v. Raffiani,*
  708 F.2d 96 (3d. Cir. 1983) ........................................................................ 16

*Bagley v. Blagojevich,*
  646 F.3d 378 (7th Cir. 2011) ...................................................................... 15

*Baraka v. McGreevy,*
  2005 WL 5610033; No. 04-1959 (D. N.J. 2005)............................................ 21

*Binay v. Bettendorf,*
  601 F.3d 640 (6th Cir. 2010) ...................................................................... 24

*Bogan v. Scott-Harris,*
  523 U.S. 44  (1988)..............................................................................passim

*Canary v. Osborn,*
  211 F.3d 324 (6th Cir. 2000) ..............................................................18, 20, 21

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)................................................................................... 13

*Clarke v. Abele,*
  184 F. Supp. 3d 692 (E.D. Wis. 2016) ......................................................... 17

*Collins v. Village of New Vienna*,
  75 Fed. Appx. 486 (2003)......................................................................20, 21

*Dickerson v. McClellan*,
  101 F.3d 1151 (6th Cir. 1996)................................................................. 24

*Edwards v. United States*,
  286 U.S. 482 (1932)................................................................................. 14

*Egervary v. Young*,
  366 F.3d 238 (3d Cir. 2004) .................................................................... 22

*Guindon v. Township of Dundee*,
  488 Fed. Appx. 27 (6th Cir. 2012)...................................................... vi, 15

*Healy v. Town of Pembroke Park*,
  831 F.2d 989 (11th Cir. 1987)............................................................15, 18

*Hernandez v. City of Lafayette*,
  643 F.2d 1188 (5th Cir. 1981) ................................................................. 16

*Humenny v. Genex Corp.*,
  390 F.3d 901 (6th Cir.2004) .................................................................... 14

*Hutchins v. Hendrixson*,
  No. 2:09-0026, 2009 WL 3246391 (M.D. Tenn., Oct. 1, 2009).................................... 16

*Latits v. Phillips*,
  878 F.3d 541 (6th Cir. 2017) ................................................................... 25

*Malley v. Briggs*,
  475 U.S. 335 (1986)................................................................................. 24

*Marvaso v. Sanchez*,
  971 F.3d 599 (6th Cir. 2020) ................................................................... 23

*Mead v. Burkart*,
  602 F.Supp.3d 1018 (E.D. Mich., 2022)................................................. 25

*Med Care Emergency Med. Servs., Inc. v. City of Pharr, Texas*,
  762 F. Supp. 3d 587 (S.D. Tex. 2025)..................................................... 17

*Morris v. City of Ridgetop*,
   No. 3: 19-cv-00631, 2025 WL 949996. at *1 (M.D. Tenn., Mar. 28, 2025) ............... 16

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) ..................................................................................... 24

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................. vi, 23

*Powers v. Hamilton County Public Defender Com'n*,
   501 F.3d 592 (6th Cir. 2007) ......................................................................... 22

*R.S.W.W., Inc. v. City of Keego Harbor*,
   397 F.3d 427 (6th Cir. 2005) ......................................................................... 15

*Reichle v. Howards*,
   132 S. Ct. 2088 (2011) ................................................................................. 23

*Saboury v. City of Lansing*,
   366 F.Supp.3d 928 (W.D. Mich. 2017) ..................................................... 15, 17

*Salter v. City of Detroit*,
   133 F.4th 527 (6th Cir. 2025) ........................................................................ 23

*Saucier v. Katz*,
   533 U.S. 194 (2001) ..................................................................................... 24

*Scott v. Harris,*
   550 U.S. 372 (2007) ..................................................................................... 13

*Shoultes v. Laidlaw*,
   886 F.2d 114 (6th Cir. 1989) ......................................................................... 14

*Silberstein v. City of Dayton*,
   440 F.3d 306 (6th Cir. 2006) ......................................................................... 24

*Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*,
   477 F.3d 854 (6th Cir. 2007) ......................................................................... 13

*Thaddeus-X v. Blatter*,
   175 F.3d 378 (6th Cir. 1999) ..................................................................... vi, 22

**Statutes**

Fed. R. Civ. P. 56 ..................................................................................................vi, 8, 13

Fed. R. Civ. P. 56 (c)(1)(A) ................................................................................. 13

**Other Authorities**

https://www.cityoftaylor.com/1514/Mayors-Office ......................................................... 3

https://www.fox2detroit.com/news/taylor-re-examines-agreement-with-
controversial-towing-company ........................................................................................ 4

## STATEMENT OF THE ISSUES PRESENTED

I.   IS AREA TOWING'S FIRST AMENDMENT RETALIATION CLAIM AGAINST FORMER-MAYOR SOLLARS BARRED BY THE DOCTRINE OF LEGISLATIVE IMMUNITY?

Defendant Sollars answers, "**Yes**."
Plaintiff Area Towing answers, "**No**."
This Court should answer, "**Yes**."

II.  IS AREA TOWING'S FIRST AMENDMENT RETALIATION CLAIM AGAINST FORMER-MAYOR SOLLARS BARRED, IN WHOLE OR IN PART, BY AN INTERVENING EVENT, *VIZ*. THE 11/18/25 RESOLUTION PASSED BY CITY COUNCIL TO APPROVE A NEW TOWING VENDOR, J&T CROVA TOWING?

Defendant Sollars answers, "**Yes**."
Plaintiff Area Towing answers, "**No**."
This Court should answer, "**Yes**."

III. IS AREA TOWING'S FIRST AMENDMENT RETALIATION CLAIM AGAINST FORMER-MAYOR SOLLARS BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY?

Defendant Sollars answers, "**Yes**."
Plaintiff Area Towing answers, "**No**."
This Court should answer, "**Yes**."

## MOST CONTROLLING AUTHORITIES

- Fed. R. Civ. P. 56.

- *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (the plaintiff in a First Amendment retaliation case must show that: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) there is a causal connection between the protected activity and the adverse action).

- *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1988) ("[a]bsolute legislative immunity extends to all actions taken in the sphere of legitimate legislative activity").

- *Guindon v. Township of Dundee*, 488 Fed. Appx. 27, 33 (6th Cir. 2012) (describing the applicable 2-part test for legislative immunity).

- *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known").

## STATEMENT OF MATERIAL FACTS

### A. INTRODUCTION

This is a First Amendment retaliation case. At all relevant times, Plaintiff, Area Towing and Recovery, Inc. ("Area Towing") and its principal, Shane Anders,[2] conducted towing business in and around the City of Taylor. In the instant lawsuit, Area Towing claims it was unlawfully retaliated against by the City's former Mayor, Defendant, Rick Sollars, for allegedly: (1) cooperating with the FBI during its investigation of Gaspar Fiore; and (2) refusing to donate money to the Mayor's re-election campaign.[3]

According to Area Towing, the alleged retaliation came in the form of Mayor Sollars' 3/23/18 veto of the Taylor City Council's decision to renew a three (3) year towing-contract between the City and Area Towing.[4] But it is undisputed that Area Towing *continued* to do business with the City of Taylor following the veto for *seven (7)* years.[5] In other words, this is *not* a situation where an exclusive contract was taken from Plaintiff in 2018 and *given* to someone else; rather, the City and its Mayor tried to eliminate the practice of awarding exclusive, multi-year contracts to vendors – including, but *not* limited to, Area Towing. To Plaintiff's dismay, the discovery process

---

[2] Mr. Anders' First Amendment retaliation claim was previously dismissed by the Court on standing grounds. (*See* 9/12/19 Opinion and Order, pp. 5-6, ECF No. 23, Page ID 184-85).

[3] *See* Amended Complaint, ECF No. 30. As noted herein, Sollars denies those claims.

[4] *Id.* at Count IV, Page ID 267-78.

[5] *See* 2025 Lawsuit, 2:25-cv-13409, Page ID 26-27.

has not yielded *any* noteworthy evidence to support its specious retaliation claim.

Accordingly, Defendant Sollars' Motion for Summary Judgment should be granted.

B. **FACTUAL BACKGROUND**

The facts of this contract dispute are simple and undisputed. For ease of reference, Mayor Sollars will address them below in three separate sub-sections.

1. *AREA TOWING AND THE CITY OF TAYLOR*

The central events of this case transpired over the course of 15-plus years. For clarity's sake, they are summarized below in the form of a timeline:

11/01/07:   Area Towing enters into a 3-year towing contract with the City of Taylor.[6]

11/01/13:   Defendant Sollars is elected as Mayor of the City of Taylor.[7]

11/29/13:   Area Towing's contract is subsequently extended for another 3-year term.[8]

11/01/16:   The City puts its towing contract out to bid. In turn, Area Towing is given a month-to-month contract until such time as a new contract is approved by the Taylor City Council.[9]

11/14/16:   The City issues a public Request for Proposal ("RFP") for its municipal towing contract.[10]

3/20/18:    The Taylor City Council votes on *two* competing towing resolutions, *viz.* (**1**) to open the City's towing contract up to the three vendors (i.e., Area Towing, Martin's Towing and J&M Towing) who received the highest marks during the

---

[6] *See* **Exhibit A**, S. Anders Dep., pp. 17-18; *See also* **Exhibit B**, 11/01/07 Contract.

[7] *See* **Exhibit C**, R. Sollars Dep., p. 6.

[8] *Id.; See also* **Exhibit D**, 2013 Extension.

[9] *Id.* at 20-21; *See also* **Exhibit E**, 11/01/16 Resolution.

[10] *Id.* at 21-22; *See also* **Exhibit F**, 11/14/16 RFP.

RFP process; <u>or</u> (**2**) to award another exclusive, multi-year contract to Area Towing.[11] By a vote of 5-2, City Council votes in favor of keeping Area Towing as the City's exclusive vendor.[12]

<u>3/23/18</u>:   Mayor Sollars vetoes[13] the Resolution awarding an exclusive, multi-year contract to Area Towing.[14] Given the absence of a successful resolution, Area Towing continues to remain the City's sole/exclusive towing vendor.[15]

<u>4/04/18</u>:   The Mayor's veto is covered by Fox 2 Detroit.[16]

<u>4/23/18</u>:   In response to a FOIA request, Councilman Herman Ramik produces copies of the "stack" of citizen complaints referenced in his interview with Fox 2.[17]

*\*For the next seven (7) years, Area Towing continues to serve as the exclusive towing company for the City of Taylor.\**

<u>11/02/21</u>:   Tim Woolley is elected as Mayor of the City of Taylor, a position he continues to hold to this day.[18]

---

[11] *See* **Exhibit G**, A. Garza Dep., pp. 40-41; *See also* **Exhibit H**, 3/20/18 Council Minutes.

[12] *Id.*

[13] Under Sec. 7.13 of the Taylor City Charter, the Mayor has the authority to veto a resolution(s) passed by City Council. In turn, the Council can override that veto by the "affirmative vote of not less than five (5) of its members." *See* https://library.municode.com/mi/taylor/codes/code_of_ordinances?nodeId=PTICI TACH_CHVIICILEORRE_S7.13VECOAC) (Last visited on 3/13/26).

[14] *See* **Exhibit C**, R. Sollars Dep., pp. 36-37; *See also* **Exhibit I**, 3/23/18 Veto.

[15] *Id.; See also* **Exhibit G**, A. Garza Dep., p. 22 (explaining the practical effect of the Mayor's veto).

[16] *See* **Exhibit A**, S. Anders Dep., pp. 41-42; *See also* **Exhibit J**, 4/04/18 Fox 2 Detroit Story.

[17] *Id.* at 43-44; *See also* **Exhibit K,** Ramik FOIA Response. The FOIA Response also included the pertinent RFP scoring by the City which rated Area Towing and J&M Towing with the highest/best score ("4 pts").

[18] *See* https://www.cityoftaylor.com/1514/Mayors-Office (Last visited on 3/05/26); *See also* **Exhibit L**, T. Wooley Dep., pp. 7-8.

10/26/25:   Area Towing files a *new* lawsuit against Mayor Wooley and the City of Taylor.[19]

11/18/25:   City Council passes a resolution[20] approving a new towing company, J&T Crova. Accordingly, Area Towing's contract with the City is terminated on 12/01/25.

### 2. THE AMENDED COMPLAINT

Plaintiff filed its Amended Complaint on October 15, 2019. (*See* Amended Complaint, RE 30, Page ID 246). In Count IV, Area Towing alleges that Mayor Sollars violated its First Amendment rights when he vetoed a City Council resolution that would have extended the company's contract with the City for another three (3) years. (*Id.* at ¶¶ 150-51, RE 30, Page ID 277). At any rate, Area Towing concedes that, notwithstanding the aforementioned veto, it continued serve as the City's exclusive towing vendor for the next seven (7) years.[21]

### 3. THE FOX 2 NEWS STORY

Throughout its Amended Complaint, Area Towing references a Fox 2 News story[22] that chronicled the events leading up to Mayor Sollars' veto. (*See* Amended Complaint, RE 30, ¶¶ 188-89, Page ID 284; *See also* Fox 2 Story, RE 34-1, Page ID 375-

---

[19] *See* 2025 Lawsuit, Case No. 25-cv-13409 (Berg, J.), ECF No. 1, Complaint.

[20] *See* **Exhibit M**, 11/18/25 Council Meeting Minutes, p. 5.

[21] *Id.* at ¶ 167, Page ID 280 ("Plaintiff Area Towing is still operating and providing services on a month-to-month [basis] in accordance with the October 18, 2016 resolution of the Taylor City Council"). That arrangement continued, unabated, until December 2025.

[22] The story is available online at: https://www.fox2detroit.com/news/taylor-re-examines-agreement-with-controversial-towing-company (Last visited on March 9, 2026).

78). The story states, in pertinent part, that:

> The question put before city council Tuesday was the length of the Area Towing contract. Should it be a *three-year towing contract* with option to extend it to nine <u>or</u> as Mayor Rick Sollars offered, *put the contract up for bid each and every year.*
>
> 'Everything we do is about continuous improvement,' Sollars said. 'I think this is one of those opportunities.'
>
> The argument made for three years was based on keeping a fair price in place for longer. On the other hand, some argued *putting it up for bid each year promotes competition.*
>
> 'It keeps everyone honest,' Sollars said. 'So I think we'll solve our long-term problems and we hope to stay in this contract.'

(*Id.*) (emphasis added). For ease of reference, a screen capture from the original broadcast, which appears at the top of the story on Fox 2's website, is excerpted below:



The Fox 2 story also addressed various citizen-complaints about Area Towing:

> Taylor City Councilman Herman 'Butch' Ramik is not shy with how he feels about Shane Anders, the owner of Area Towing.
>
> '*How can you award somebody a major, very large contract - and award him that, after what he's done to the people and the visitors of this community*,' Ramik said.
>
> Some residents came forward to voice their displeasure at City Hall Tuesday prior to the vote.
>
> 'He's already got his foot in the door,' said one resident. 'He's held us hostage for all these years.' Another resident spoke about the city council's knowledge of all the atrocities the company has committed in the past.
>
> Ramik said he '*has a stack of complaints*' he has heard about the towing company over the years.
>
> He says it's his job to listen to the citizens and he says, they have a lot about the tow company.

(*Id.*) (emphasis added).

## C. **PROCEDURAL BACKGROUND**

On November 1, 2020, Mayor Sollars filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (*See* Motion for Judgment, RE 34, Page ID 349). In the Motion, Sollars argued that Area Towing's retaliation claim was barred by the doctrines of legislative and qualified immunity. (*Id.* at 3-5, RE 34, Page ID 361-63).

On January 23, 2020, this Court (Hon. George Caram Steeh) waived oral

argument and ruled on Mayor Sollars' Motion.[23] Although Judge Steeh found that Area Towing's "official" capacity claim failed as a matter of law (*Id. at* 14-15, RE 40, Page ID 432-33), he denied the Motion with respect to its "individual" capacity claim against the Mayor. (*Id.* at 6-8, RE 40, Page ID 424-26).

The Court began its analysis of that claim with the following observation:

> Plaintiffs allege that the Taylor City Council passed a resolution that authorized a three-year contract for Area Towing. Sollars vetoed that resolution, **an action that is part of the legislative process**.

(*Id.* at 7, RE 40, Page ID 425) (emphasis added). But the Court ultimately found that the veto was "more administrative than legislative[.]" (*Id.* RE 40, Page ID 425) Finally, the District Court concluded that qualified immunity did not apply either. (*Id.* at 13, RE 40, Page ID 431) ("A reasonable official in Sollars' position would understand that vetoing a contract with the city because of the person's protected activity is a First Amendment violation. Sollars is not entitled to qualified immunity."). Defendant, in turn, filed a Notice of Appeal. (*See* Notice of Appeal, RE 41, Page ID 438).

On January 8, 2021, Judge Steeh's decision was affirmed by the Sixth Circuit.[24] In its Opinion, the Court of Appeals reasoned that "discovery is necessary before we can determine whether the veto was legislative in substance." (*Id.* at 18). The case was then remanded to the District Court.

---

[23] *See* 1/23/20 Opinion and Order, ECF No. 40 at Page ID 419.
[24] *See Anders v. Cuevas*, 984 F.3d 1166 (6th Cir. 2021).

D. **PERTINENT DEPOSITION TESTIMONY**

With the benefit of a lengthy discovery period, it is clear that Plaintiff's retaliation claim cannot withstand the exacting analysis required by Fed. R. Civ. P. 56. For ease of reference, Defendant will summarize the pertinent deposition testimony below:

- Jennifer Fiore, daughter of Gasper Fiore, testified at her deposition that there were many complaints about Area Towing's high pricing, which "was a big problem why they wanted to redo the tow areas[.]"[25]

- Joseph Renkiewicz, the owner of trucking company Broadway Express, testified that Area Towing fees were the highest in Southeast Michigan compared to other towers and, therefore, the citizens of Taylor would be better served by another tower.[26] Mr. Renkiewicz experienced these high prices personally when Shane Anders impounded his trucks, as well as his daughter's truck.[27]

- John Blair, current Chief of Police for Taylor, testified that he understood Mayor Sollar's desire for multiple vendors for towing in Taylor: "I understand the Mayor's thinking with that. We have multiple businesses, our contracts for certain things, so I can understand that thinking."[28] Furthermore, Chief Blair recalled that Mayor Sollars, "believed that in case one of the other vendors could no longer fulfill the contractual requirements, he wanted someone on board ready to go."[29]

- Likewise, former Taylor Chief of Police Mary Sclabassi recognized in her testimony that there could be differences in opinion on whether to have a single towing vendor or multiple. She personally was more concerned with streamlining tows to make things easier for the police department, but that she was "sure other people have different views."[30] She also acknowledged

---

[25] *See* **Exhibit N**, J. Fiore Dep., pp. 58.

[26] *See* **Exhibit O**, J. Renkiewicz Dep., pp. 44.

[27] *Id.* at 13, 21-22.

[28] *See* **Exhibit P**, J. Blair Dep., pp. 10.

[29] *Id.*

[30] *See* **Exhibit Q**, M. Sclabassi Dep., pp. 31.

that there were a variety of opinions amongst the administration about how long the contract with a towing vendor should be.[31]

- Tim Wooley, the current mayor and former councilman for Taylor, when asked what reason Mayor Sollars wanted three towers, he stated: "I think he, you know, he always kind of said was, you know, he likes competition, you know, it made for better service, I think that was kind of his reasoning for doing this."[32]

- Mayor Sollars testified about his desire to promote competition prior to the subject conflict: "So I think when I took office in 2013, one of the goals we had was to try to promote as many multiple vendor contracts as we could instead of exclusivity. We did it with engineer. We did it with emergency board-ups."[33]

- Mayor Sollars also explained his basic reasoning as to why the City would benefit economically from having multiple towers: "…[I]t encourages competition, and as a result, it forced everybody to be better and always keep honest pricing, and so that was always our goal from day one from the day I took office."[34]

- Finally, Former House Representative and councilman for the City of Taylor Alex Garza agreed in his deposition that it is perfectly reasonable for two public officials to have an honest disagreement regarding the length of a public contract (and that he himself has had disagreements of the same nature throughout his tenure as a public official).[35] The following exchange from Councilman Garza's deposition is instructive:

  > Q. All right. In your roughly ten years of experience as a public official, have you encountered situations where instead of a -- for an exclusive contract, a given public service was handled by way of multiple vendors?
  >
  > **A. Yes.**

---

[31] *Id.* at 37.

[32] *See* **Exhibit L**, T. Wooley Dep., pp. 11.

[33] *See* **Exhibit C**, R. Sollars Dep., pp. 83.

[34] *Id.* at 83-84.

[35] *See* **Exhibit G**, A. Garza Dep., pp. 32-33

Q. So fair to say that, given the myriad of things that a municipality the size of Taylor is going to handle, some contracts might be exclusive, some might be open to multiple vendors, fair?

**A. Yes, that's fair.**

Q. Okay. And similar question to what I asked you about the term.· Is the decision of whether to go with an exclusive contract or open it up to multiple vendors an issue over which two public officials could have an honest disagreement?

**A. Yes.**

Q. And so, for instance, if we probe this a little further, some people might think that, if we go with one vendor, it's going to streamline the process and get rid of some inefficiencies.· Fair statement?

**A. That's fair.**

Q. And the other side of that coin, is it likewise a fair statement that some people might say opening a given service up to multiple vendors might promote competition and encourage everyone to do better. Fair position?

**A. That's fair.**

(*Id.* at pp. 32-24) (emphasis added).

E. **FBI RECORDS**

During discovery, the parties obtained records from the FBI's investigation of Gasper Fiore. As part of its investigation, the Bureau gathered text messages between Mayor Sollars and various individuals, which speak to his general dissatisfaction with the quality of the City's towing services.[36] For ease of reference, the undersigned has

---

[36] *See* **Exhibit R**, FBI Text Messages.

10

provided a chart that outlines some of the more salient messages:

| Statement by Defendant Sollars | Recipient | Date |
|---|---|---|
| "The sad part is that towing will never be popular with whoever we have in place. Ultimately, we need to probably meet with Shane soon. I am so sick of discussing towing already. We have at least 5 council members that hate him even though he is probably the most honest of all the towing groups." In a follow-up message, Mayor Sollars stated about Plaintiff: "<u>His pricing is too high and it is tough to defend</u>."[37] | Mary Sclabassi | 1/21/2014 |
| "There is a lot of dirty shit that goes on behind the scenes and the towing business is the absolute worst. We did a deep dive analysis into our towing contract and it would make you sick to see how much <u>double</u> and <u>triple</u> billing has occurred over the last decade."[38] | Doug Geiss | 1/04/2018 |
| "Just as an FYI, the Taylor resident rates only make up approximately 5% of all tows with in the city. It could be as high as 10% by now but historically it's a pretty low number. What about the other 90 to 95% of the non Taylor residents? It's OK to fuck them?"[39] | Charlie Johnson | 3/16/2018 |
| "Generally speaking, most of the elected officials have always historically been concerned with Taylor residents only. While I understand that's who votes for us it doesn't mean that we should look the other way and screw over everyone else."[40] | Charlie Johnson | 3/16/2018 |
| "I talked to Alex and Dan yesterday extensively to avoid the veto but could not. <u>It was not a political veto but I had to protect the City of Taylor</u>[.]"[41] | Sue Riddle | 3/24/2018 |
| "Honestly, I hope we all talk to each other , regardless if we agree or not. <u>I really didn't want to veto but could not just let another bad towing contract occur</u>....."[42] | Sue Riddle | 3/24/2018 |

---

[37] *Id.* at Bates No. 000026 (emphasis added).

[38] *Id.* at Bates No. 000015 (emphasis added).

[39] *Id.* at Bates No. 000011 (note: the above typos are repeated again here because they are included within the original messages).

[40] *Id.*

[41] *Id.* at Bates No. 000056.

[42] *Id.*

11

| Statement by Defendant Sollars | Recipient | Date |
|---|---|---|
| "Shane charged Dearborn hts pd 16000 to tow and store the police car involved in fatal accident on vanborn rd[.]" Shortly thereafter, Mayor Sollars followed up with, "What happened to the detailed, itemized billing practices ? That needs to be added to our proposed contract. There is no way you could tell if this conforms to our contractual rates or not[.]"[43] | Bobby Dickerson | 5/31/2018 |

The FBI also conducted several interviews with potentially relevant actors in its investigation of Gasper Fiore. Defendant has attached *redacted* copies of those Interview Reports and has filed a Motion to file *unredacted* versions under seal.[44] The Reports do not rebut or otherwise impact the evidence and testimony addressed *supra* in this Brief.

F. **THE 2025 LAWSUIT**

On October 25, 2025, Area Towing initiated *another* lawsuit against the City of Taylor, Current Mayor Tim Wooley, City Clerk Cindy Bower, and Councilman Charles Johnson.[45] The Complaint contains a First Amendment Retaliation claim and an Equal Protection claim. Plaintiff alleges in this new lawsuit that Area Towing's month-to-month contract was terminated because it: (a) opposed Woolley's mayoral candidacy; and; (b) filed a prior state court action challenging the City of Taylor's bidding process for selecting towers.[46] In short, Plaintiff claims to be the victim of retaliation by *two* different Administrations (i.e., Sollars and Woolley) *vis á vis* its towing contract.

---

[43] *Id.* at Bates No. 000050.

[44] *See* **Exhibit S**, Redacted FBI Interviews.

[45] *See* 2025 Lawsuit, 2:25-cv-13409, ECF 1 at Page ID 1.

[46] *Id.* at Page ID 27-28.

## APPLICABLE LEGAL STANDARD

FED. R. CIV. P. 56

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). However, the nonmoving party may not simply rely on bare allegations or denials; rather, he must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A); *Cf. Scott v. Harris,* 550 U.S. 372 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should *not* adopt *that* version of the facts for purposes of ruling on a motion for summary judgment").

When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for his motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To withstand summary judgment, "the non-moving party must present sufficient evidence to create a genuine issue of material fact." *Humenny v. Genex Corp.*, 390 F.3d 901, 904

13

(6th Cir.2004). This requires an *affirmative* showing that there is evidence upon which the jury could reasonably find for the non-moving party. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (emphasis added).

## **ARGUMENT**

I.     **AREA TOWING HAS FAILED TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT.**

In order to survive summary judgment, a plaintiff must demonstrate a genuine issue of material fact. Plaintiff has failed to do so here because the relevant evidence demonstrates that Mayor Sollars was engaged in legislative activity, entitling him to legislative immunity. The Supreme Court has held that "[a]bsolute legislative immunity extends to *all* actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1988) (emphasis added). To determine whether a given act falls within the sphere of legislative immunity, the Court "must examine the nature of the act, rather than the motive or intent of the official performing it." *Id.* at 54.

A mayor, though generally an *executive* officer of a municipality, may also possess certain *legislative* functions. *See generally Edwards v. United States*, 286 U.S. 482, 491 (1932) (explaining that the President acts legislatively in approving or vetoing bills passed by Congress). Unsurprisingly, the Sixth Circuit has dismissed similar § 1983 claims premised on votes taken by mayors and city council members alike. *See e.g., Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989) ("The Mayor and Council clearly were acting in their legislative capacities in passing the 1978 zoning ordinance"); *R.S.W.W., Inc. v.*

14

*City of Keego Harbor*, 397 F.3d 427, 437-38 (6th Cir. 2005) (applying the doctrine in favor of members of the Keego Harbor City Council, and observing that "local legislators are entitled to absolute immunity when they act in their legislative capacities"); *See also Bagley v. Blagojevich*, 646 F.3d 378, 393 (7th Cir. 2011) (legislative immunity protected governor's veto in § 1983 retaliation case); *Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987) (reaching a similar result where defendant-mayor voted to replace plaintiffs with "an outside agency for police services").

To address claims of this ilk, the Sixth Circuit has fashioned a two-part test for determining whether legislative immunity applies. *See Saboury v. City of Lansing*, 366 F.Supp.3d 928, 933-34 (W.D. Mich. 2017) (citing *Guindon v. Township of Dundee*, 488 Fed.Appx. 27, 33 (6th Cir. 2012)). First, the Court should consider the act's "form," and determine whether it was an "integral step[] in the legislative process." Second, the Court should analyze the "substance" of the act and, in so doing, determine whether it bears "the hallmarks of traditional legislation" – for instance, a relationship to the "budgetary priorities of the city," or to the "services the city provides to constituents." *Id.* At the Rule 12 stage, the Sixth Circuit was unable to say, definitively, whether Mayor Sollars' actions were policy-based without further discovery.[47] As set forth *infra* in the paragraphs that follow, it is now clear that Mayor Sollars' 3/23/18 veto satisfies *both* prongs of the applicable legislative immunity test.

---

[47] See *Anders v. Cuevas*, 984 F.3d 1166, 1182 (6th Cir. 2021).

A.       **The 'Form' of the Mayor's Veto was Legislative in Nature**.

As the U.S. Court of Appeals for the Fifth Circuit explained in *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1194 (5th Cir. 1981), "a mayor's veto, like the veto of the President or a state governor, is *undeniably* part of the legislative process."[48] *Id.* (emphasis added). In light of the foregoing, it is undisputed that the "form" of Mayor Sollars' conduct (i.e., his 3/23/18 veto) was legislative in nature. *Id.*[49] *See also Morris v. City of Ridgetop*, No. 3: 19-cv-00631, 2025 WL 949996. at *1, *13 (M.D. Tenn., Mar. 28, 2025) (holding that a vote to eliminate a police department was a legislative activity, entitling city board members to absolute legislative immunity); *See also Hutchins v. Hendrixson*, No. 2:09-0026, 2009 WL 3246391, at *1, *13 (M.D. Tenn., Oct. 1, 2009) (finding that a mayor's veto of the board's decision setting the employee's hourly rate was done in his official capacity and entitled him to legislative immunity, even if he exceeded his authority). Notably, the Sixth Circuit has already acknowledged that the form of Mayor Sollars' 3/23/18 was legislative in nature.[50] *See Area Towing v. Sollars,* 984 F.3d 1166, 1182 (6th Cir. 2020) ("the parties do not dispute that Sollars' veto is legislative in form").

---

[48] Incidentally, the same is true when a mayor votes in *favor* of a given piece of legislation. *See e.g., Atchison v. Raffiani*, 708 F.2d 96, 99 (3d. Cir. 1983) (applying legislative immunity where defendant-mayor "voted to pass an ordinance to abolish the position of assistant building inspector").

[49] *See* 1/23/20 Opinion, p. 7, ECF No. 40 at PageID.425; *See also Hernandez, supra* at 1194 ("When the mayor exercises his veto power, it constitutes the policy-making decision of an individual elected official. It is as much an exercise of legislative decision-making as is the vote of a member of Congress, a state legislator, or a city councilman").

[50] *See* Taylor City Charter, Sec. 7.13 (giving the Mayor authority to veto a resolution(s) passed by City Council and explaining the process for Council to override the same).

16

B.      **The 'Substance' of the Mayor's Veto was Legislative in Nature.**

The "substance" of a given act is legislative in nature if it implicates legitimate policy-making concerns (e.g., budgetary priorities, city services, etc.). *Saboury, supra* at 934-35.  In the paragraphs that follow, Defendant Sollars will summarize the pertinent caselaw on this point.

1.      *Other District Courts Have Applied Legislative Immunity To Similar Executive Decisions.*

Other district courts have applied legislative immunity when confronted with similar facts. In *Clarke v. Abele*, 184 F. Supp. 3d 692, 696-697 (E.D. Wis. 2016), judgment entered, No. 16-CV-208-JPS, 2016 WL 1621933 (E.D. Wis. Apr. 21, 2016), the Eastern District of Wisconsin found the County Executive's veto of an amendment to the county's police budget was legislative because it was done pursuant to statutory authority and the County Executive's discretionary authority to make policy decisions regarding governmental services. As such, the County Executive was entitled to legislative immunity. *See also Med Care Emergency Med. Servs., Inc. v. City of Pharr, Texas*, 762 F. Supp. 3d 587, 595 (S.D. Tex. 2025) (city board's vote for EMS service to be the sole provider for the municipality was legislative conduct that warranted immunity).

Here, it is undisputed that the relevant veto dealt with the question of whether towing services in the City of Taylor should be: (**1**) awarded *exclusively* to one vendor for

17

a period of three years; <u>or</u> (**2**) opened up to *multiple* vendors on a yearly basis.[51] And, just like the defendant-mayor's decision in *Healy, supra* at 993 (i.e., to outsource certain police-duties to an "outside agency"), Mayor Sollars' veto was a substantively legislative decision for one simple and inescapable reason, *viz. it dealt with the manner in which a key city service (e.g., towing) should be provided to residents*. As evidenced by the deposition testimony of the Defendant and his colleagues, it was common knowledge throughout Taylor City Hall that Mayor Sollars was committed to the philosophy/belief that multiple vendors would promote competition and, in turn, lower prices for Taylor residents. The Mayor's policy-based reasoning was corroborated during discovery by a plethora of third-party witnesses, *all* of whom *conceded* that this case hinges on a debate over the length and structure of an important municipal contract.[52]  In short, the "substance" of Mayor Sollar's veto was legislative in nature because it was, on balance, driven by legitimate policy-based concerns.

> 2. *Plaintiff's Anticipated Reliance On The Canary Case Is Misplaced.*

Defendant anticipates that Plaintiff will argue in his Response that this case is governed by *Canary v. Osborn*, 211 F.3d 324 (6th Cir. 2000). Respectfully, that decision is easily distinguishable.

In *Canary*, the Sixth Circuit held that legislative immunity did not apply to the

---

[51] *See* Fox 2 Story, ECF No. 34-1 at PageID.375-78 ("putting [the contract] up for bid each year promotes competition").

[52] *See* pp. 8-10, *supra* (summarizing the pertinent deposition testimony).

defendant-school-board's decision to *not* renew plaintiff-assistant-principal's contract. According to plaintiff, the Board's decision resulted from complaints he made about the District's novel plan to improve students' "achievement test scores," which he bluntly described as "cheating." *Id.* at 325-26. In turn, plaintiff brought a First Amendment retaliation lawsuit, and defendants moved for dismissal citing legislative immunity. *Id.* at 327-28.

The District Court rejected defendants' argument, and the Court of Appeals affirmed. In a unanimous opinion written by Judge Gilman, the Court began its analysis with an overview of the seminal legislative immunity case, *Bogan v. Scott-Harris*, 523 U.S. 44 (1998),[53] and emphasized that the Court should focus on the "nature" of the underlying act, *not* the decision-maker(s) "motive or intent." *Id.* at 329.     Having spoken to the applicable legal standard, the Court explained that, in its view, there were two (2) main reasons why defendants' votes were not immune from suit:

> 1.     The evidence suggested that the Board was making "personalized assessments of individual employees," rather than an "impersonal budgetary analysis of various positions"; and
>
> 2.     The vote did not involve the "termination of a position" and, in fact, *plaintiff's job had already been given to another assistant-principal*.

*Id.* at 330-31. In short, because the nature of the relevant vote was, on balance, more

---

[53] In *Bogan*, the Supreme Court held that the decision to eliminate plaintiff's department (i.e., of which she was the *lone* member) was protected by legislative immunity. *Id.* at 47.

19

administrative (i.e., *personal*) than legislative (i.e., *budgetary*), this Court correctly determined that legislative immunity did *not* apply.

In several post-*Canary* cases, the Sixth Circuit has applied the standard set forth in *Bogan, supra,* and reached the *opposite* conclusion. For instance, in *Collins v. Village of New Vienna*, 75 Fed. Appx. 486 (6th Cir. 2003), the Court of Appeals distinguished *Canary* and found that legislative immunity applied to defendant-council-members' decision to eliminate plaintiff's "Village Administrator" position. *Id.* at 487-88. In so doing, the Court reasoned that:

> Even crediting plaintiff's assertions as true, the district court correctly concluded that defendants' act herein was legislative in nature. **Defendants passed an ordinance that abolished plaintiff's position**, but the ordinance did not engage in an individual assessment of plaintiff's performance, and **it had future implications beyond plaintiff's employment**. Under these circumstances, the district court correctly concluded that <u>defendants' act of abolishing the *position* of Village Administrator fell within the Supreme Court's holding in *Bogan*</u>.

*Id.* at 488 (emphasis added).

Along similar lines, in *Arabbo v. City of Burton*, 689 Fed. Appx. 418 (6th Cir. 2017), the Sixth Circuit held that legislative immunity applied to defendant-council-members' decision to deny public-funding for plaintiff's 228-unit apartment complex. *Id.* at 419. Although plaintiff argued that the decision was the result of the Council's "anti-Arab animus," *Id.* at 420, this Court concluded that the substance of the vote was decidedly legislative. As Judge White explained on behalf of a unanimous panel:

20

> The decision to decline to engage in a financial transaction that could affect the city's budgetary priorities and that could expose it to financial risk is a *legislative* decision.

*Id*. at 421 (emphasis added) (citing *Bogan, supra* at 55-56). Accordingly, plaintiff's lawsuit was properly dismissed on legislative immunity grounds. *Id.; See also Baraka v. McGreevy,* 2005 WL 5610033, * 4; No. 04-1959 (D. N.J. 2005) (distinguishing *Canary* on the ground that "[p]laintiff's employment was *not* terminated in this case"); *Cf. Bogan, supra* at 52 ("the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability").

Turning again to the instant case, a review of the pertinent caselaw illustrates the significant differences between this case and *Canary*. Unlike in that case, Mayor Sollars did not replace A. In fact, Area Towing continued to serve as the City's exclusive vendor until 12/01/25. Consequently, the better point of reference is *Bogan* or *Collins, supra*, where legislative immunity was properly applied to an executive's decision to eliminate certain governmental *positions/contracts*. In short, because this is *not* a situation where a contract was *taken* from Area Towing in 2018 and *given* to someone else, Sollars' 3/23/18 veto is entitled to the ample protections afforded by the doctrine of legislative immunity.

## II. THE RECENT TERMINATION OF AREA TOWING'S MONTH-TO-MONTH CONTRACT IS AN INTERVENING CAUSE BARRING, IN WHOLE OR IN PART, PLAINTIFF'S CLAIM AGAINST SOLLARS.

To establish a First Amendment retaliation claim, the plaintiff must show that: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to

adverse action or deprived of some benefit; and (3) there is a causal connection between the protected activity and the adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Even if Plaintiff's claim was not barred by immunity, Plaintiff cannot meet the third element of causation because the allegations set forth in Plaintiff's 2025 lawsuit describe – in no uncertain terms – an intervening event (i.e., the 11/18/25 resolution passed by City Council).[54]

With § 1983 claims, it is possible for a defendant to avoid liability if an intervening act of a third-party becomes the proximate cause of the plaintiff's injury. *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 610 (6th Cir. 2007). The Sixth Circuit explained the intervening cause rule as it relates claims of this ilk:

> This rule has grown out of the general tort principle that 'an intervening act of a third party, which [causes harm] after the first person's wrongful act has been committed, is a **superseding cause which prevents the first person from being liable** [even though the first person's conduct] was a substantial factor in bringing' about them harm.

*Id.* (emphasis added) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). Here, even if the Court were to conclude that Sollar's veto was retaliatory, the 2025 termination of Plaintiff's month-to-month contract was, without question, the consequence of a resolution passed by the *current* members of the Taylor City Council.[55] These two legislative events occurred more *seven (7)* years apart, yet Plaintiff appears to be claiming the *same* damages in *both* pending lawsuits. Respectfully, this makes no sense

---

[54] *See* **Exhibit M**, 11/18/25 Council Meeting Minutes, p. 5.
[55] *Id.*

and runs contrary to applicable law. *Id.*

When the actions of a neutral third-party (indeed, *multiple* third-parties) are the superseding cause of the plaintiff's injuries, "that cuts off the otherwise foreseeable chain of causation and proximate cause is lacking." *Salter v. City of Detroit*, 133 F.4th 527, 552 (6th Cir. 2025) (citing *Marvaso v. Sanchez*, 971 F.3d 599, 615 (Nalbandian, J., dissenting)). And here, the end of Plaintiff's relationship with the City was the result of a resolution passed the Taylor City Council in *2025* – which can hardly be described as a foreseeable consequence of a *2018* veto made by the City's *former* Mayor. *Id.*

In short, any post-2025 damages claimed by Plaintiff cannot be attributed to Sollars, whose tenure as Mayor ended in 2021. The material events of the 2025 lawsuit sever the proximate cause between Plaintiff and Sollars and, therefore, Area Towing's damages should be capped and/or limited as of 12/01/25 because its contract with the City continued, uninterrupted, until that time.

III.    **AREA TOWING'S RETALIATION CLAIM IS BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY**.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A "clearly established" right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2011). Ultimately, the doctrine is designed to

23

protect "all but the plainly incompetent who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is an absolute defense to § 1983 claims. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). In passing on a given qualified immunity defense, the Court must determine: (**1**) whether "the facts alleged show the officer's conduct violated a constitutional right"; <u>and</u> (**2**) whether that right was "clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 313 (2015); *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001). Once a qualified immunity defense is raised, "the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Binay*, 601 F.3d at 647 (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). These questions can, and should, be answered by the Court as a matter of law. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).

In conducting the above analysis, the issue is not whether the plaintiff *generally* has constitutional rights. In fact, that general formulation is exactly what the Supreme Court has instructed courts *not* to do. The Supreme Court has been clear on this point:

> This inquiry . . . **must be undertaken in light of the <u>specific</u> <u>context</u> of the case, not as a broad general proposition** . . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful **in the situation <u>he</u> confronted**.

*Saucier, supra* at 201–02 (emphasis added). Thus, the specific context for the Court to address here is the following one: a local official standing in the shoes of Mayor Sollars at the time the pertinent legislative-action was taken. *Id.*; *See also Mead v. Burkart*, 602

24

F.Supp.3d 1018 (E.D. Mich., 2022) (finding that plaintiff did not meet burden in demonstrating right was clearly established when he failed to identity "on-point" caselaw holding that driver's consent to search car is insufficient authorization to search passenger's bag); *Latits v. Phillips*, 878 F.3d 541 (6th Cir. 2017) (similar).

Here, it was not "clearly established" in 2018 – nor for that matter is it "clearly established" today – that an analogous policy-based veto could give rise to a viable First Amendment retaliation claim. The pertinent caselaw described *supra* in this Brief illustrates that, at all relevant times, Mayor Sollars was acting in a lawful fashion when he tried to relegate exclusive, multi-year towing contracts to the dustbin of history. Accordingly, even if Area Towing *has* established a prime facie retaliation case (note: it *hasn't*), Plaintiff's retaliation claim against Mayor Sollars is *barred* by qualified immunity. *Id.*

## CONCLUSION & RELIEF REQUESTED

Given the relevant facts and law, Plaintiff has failed to establish a genuine issue of material fact on its First Amendment retaliation claim against former Mayor Sollars. Accordingly, Defendant's Motion for Summary Judgment should be granted.

GIARMARCO, MULLINS & HORTON, P.C.

By: /s/ Geoffrey S. Wagner
Geoffrey S. Wagner (P70839)
*Attorney for Defendant Sollars*
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084
(248) 457-7000; Fax: (248) 457-7001
gwagner@gmhlaw.com

Dated: March 26, 2026

25

## CERTIFICATE SERVICE

GEOFFREY S. WAGNER states that on March 26, 2026, he did serve a copy of the foregoing document via the Court's electronic filing system, on the aforementioned date, which will send notification of such filing to the attorneys of record.

By: ___/s/ Geoffrey S. Wagner_____

GEOFFREY S. WAGNER

Dated: March 26, 2026